## STATE *ex rel.* CRANMER v. THORSON.

1. Under Laws 1891, Chap. 57, § 12, providing that "whenever any proposed constitution or constitutional amendment or other question is to be submitted to the people of the state for popular vote, the secretary of state shall * * * certify the same to the auditor of each county in the state," it is the duty of the secretary to certify a question directed by the legislature as to whether a provision of the constitution shall be repealed, though an affirmative answer by the people would not affect the constitution.

2. Injunction will not lie at the instance of a taxpayer and elector to enjoin the submission to the vote of the people of a constitutional amendment because the submission is invalid, as such taxpayer would receive no substantial injury from such submission.

3. Courts have no jurisdiction to prevent the submission to the people, as directed by the legislature, of a question involving an amendment to the constitution, by enjoining the secretary of state from certifying the question to the county auditors, as such action would be an unwarranted interference with the legislative authority.

(Opinion filed July 29, 1896.)

Original action to enjoin defendant from certifying to the county auditors a proposition to amend the state constitution. Action dismissed.

The facts are stated in the opinion.

*S. H. Cranmer*, in *pro per.*

*John E. Carland*, for defendant.

HANEY, J. This action was commenced in this court for the purpose of enjoining defendant, as secretary of state, from certifying to the auditors of the state the question contained in the following joint resolution passed at the last session of the legislature, an engrossed copy of which is now on file in his office:

"House joint resolution proposing an amendment to the constitution. A joint resolution to amend the constitution of the State of South Dakota by repealing Article 24 thereof relating to prohibition, and submitting the same to a vote of the people.

"Be it resolved by the house of representatives of the State of South Dakota, the senate concurring: Section 1. Question Submitted. That at the general election to be held in the State of South Dakota on the first Tuesday after the first Monday in November, 1896, there shall be submitted to a vote of the qualified electors of the State of South Dakota the following question: 'Shall Article twenty-four of the constitution be repealed?' " Laws 1895, Chap. 38.

After filing certain objections to the issuance of a restraining order, pending litigation, defendant answered, evidence was introduced on behalf of the relator, and the cause was heard and submitted, a decision upon defendant's objection being reserved for consideration with the case upon its merits. The relator is an elector and taxpayer. Defendant intends to, and will, unless restrained by injunction or other legal process, certify the question as a proposed constitutional amendment. The relator contends that the passage of the resolution, and

the submission of the question embraced therein, are steps in an attempt to amend the state constitution; that the methods prescribed for its amendment have not been complied with; therefore defendant has no authority to certify the same. His argument rests upon the theory that the secretary is only authorized to certify proposed amendments. He claims the legislature did not itself agree to any amendment; that it merely resolved to ask the qualified electors of the state a certain question, and that the constitution will not be changed whatever reply may be returned. The fallacy of this argument results from a misconception of defendant's official duty. Such duty is thus defined: "Whenever a proposed constitution or constitutional amendment, or other question is to be submitted to the people of the state for popular vote, the secretary of state shall duly and not less than thirty days before election, certify the same to the auditor of each county in the state, and the auditor of each county shall include the same in the publication provided for in Section 10 of this act. Questions to be submitted to the people of a county or municipality shall be advertised as provided of nominees for office by said election." Laws 1891, c. 57, § 12. Whether the joint resolution be regarded as embodying a proposed amendment or some other question to be submitted to the people of the state, the statute requires that it be certified in the same manner. The court is aware of no law prohibiting the legislature from submitting any question its wisdom may suggest. It may submit a question not intended to change the organic law. Whenever it directs any question to be submitted, it is the duty of the secretary to certify it, and it is wholly immaterial whether that officer considers that it involves an amendment of the constitution or not. Manifestly, then, it is his duty to certify the question in this joint resolution, even if an affirmative reply by the electors will not affect any part of the constitution, and this court should not prevent him from performing his official duty. But there are other, perhaps more convincing, reasons why the injunction should

not issue in this action.  Because this court has power to issue writs of *mandamus, quo warranto, certiorari,* injunction and other original and remedial writs, with authority to hear and determine the same, in such cases and under such regulations as may be provided by law (Const. Art. 5, § 3), it does not follow that it has jurisdiction to issue an injunction upon any and all occasions.  It is clothed with all the powers of a court of equity as understood and defined when the constitution was adopted, but its jurisdiction is limited to such matters as were then of recognized equitable cognizance.  Although in most instances its decrees are final, and not reviewable, it is subject to the law to which the conscience of its judges must yield ready obedience, however ample may be their physical ability or opportunities to successfully disregard it.  Then, assuming the resolution involves a proposed amendment, it becomes the duty of the court to determine in the first instance, and on its own motion, because jurisdiction cannot be conferred even by consent, whether it has power to hear and determine the defendant's right to perform the proposed official action.  It is a familiar principle that substantial and positive injury must always be made to appear to the satisfaction of a court before it will grant an injunction, and acts which, however irregular and unauthorized, can have no injurious results, constitute no ground for relief.  1 High, Inj. § 9.  The party seeking an injunction must show, not only a clear legal right, but a well grounded apprehension of immediate injury.  An injunction will not be granted where the injury is doubtful, or the violation of complainant's rights is merely speculative.  Injury material and actual, not fanciful or theoretical, or merely possible, must be shown as the necessary or probable result of the action to be restrained.  It is not sufficient to allege simply that the party will suffer irreparable injury, but he must set out the facts so that the court may determine the necessity for its intervention.  1 Beach, Mod. Eq. Jur. §§ 641, 642.  The complainant who seeks an injunction must be able to specify some

particular act, the performance of which will damnify him, and it is such act alone that he can restrain. This court has no power to examine an act of the legislature generally and declare it unconstitutional. The limit of our authority in this respect is to disregard, as in violation of the constitution, any act or part of an act which stands in the way of the legal rights of the suitor before us; but a suitor who calls upon a court of chancery to arrest the performance of a duty imposed by the legislature upon a public officer must show conclusively not only that the act about to be performed is unconstitutional, but also that it will inflict a direct injury upon him. Gibbs v. Green, 54 Miss. 592. It has not been shown, nor can it be imagined, in what manner the relator will be injured by the contemplated action of defendant. If the legislature has proceeded properly, and its proposed amendment shall be ratified by the people, the relator will have no legal cause of complaint, because, as a good citizen of the state, he will be bound to cheerfully accept the lawfully expressed will of a majority of its sovereign electors. If, on the other hand, the action of the legislature was such as to render any answer to the question inoperative, the constitution will not be modified, and no one will be affected. Any additional burden which might result to relator, as a taxpayer, by reason of submitting this question at a general election, is too trifling, fanciful and speculative for serious consideration; and if, as claimed by him, the legislature has done nothing but submit a question to the people, it has done what it had a right to do, and any additional expense resulting from such action will be a legitimate expenditure of public money. Evidently an essential ground of equitable jurisdiction is wanting. Having failed to show that he will be injured by the intended action of defendant, the relator is not entitled to have it enjoined, or its regularity investigated, in this action. This was one of the objections urged by the learned counsel for defendant in opposition to the issuance of a restraining order pending litigation. It was well taken, and

applies with equal force to the issuance of a permanent injunction.

There is another view, which involves the structure of the state government and the relation of its several departments. Should it be conceded that the relator has such an interest in the matter as entitles him to be heard, or that the action involves a question of such public concern as would warrant an attempt by the attorney general to obtain an injunction, could this court issue it? No precedent for such an action has been presented by counsel or discovered by the court. In discussing this phase of the case it will be assumed an amendment of the constitution was intended requiring the concurrent action of the legislature and electors. The former has acted. Its action will be communicated to the latter by means of defendant's certificate. Until the latter shall have expressed their approval, the proceeding is incomplete, and the constitution will remain unchanged. The proposed amendment is on its way to the electors. Can this court, at this time, impede its progress? Can it be called upon to anticipate conditions which may never exist? Can it interpose its process between the legislature and electors, who are alone clothed with power to modify the fundamental law, before both have acted, and while the matter is pending and incomplete? The powers of the state government are divided into three distinct departments— the legislative, executive and judicial. The powers and duties of each are prescribed by the constitution. Const. Art. 2. Power to amend the constitution belongs exclusively to the legislature and electors. It is legislation of the most important character. This court has power to determine what such legislation is, what the constitution contains, but not what it should contain. It has power to determine what statutory laws exist, and whether or not they conflict with the constitution; but it cannot say what laws shall or shall not be enacted. It has the power, and it is its duty, whenever the question arises in the usual course of litigation, wherein the substantial rights

of any actual litigant are involved, to decide whether any statute has been legally enacted, or whether any change in the constitution has been legally effected, but it will hardly be contended that it can interpose in any case to restrain the enactment of an unconstitutional law. Mississippi v. Johnson, 4 Wall. 500. If the legislature cannot be enjoined when engaged in the enactment of unconstitutional statutes, it and the electors cannot be enjoined when engaged in an unwarranted attempt to amend the constitution. To issue an injunction in this action would be to enjoin the legislature and electors in the exercise of their legislative duty. Suppose a bill having passed the legislature, is in possession of the governor, or, to make the analogy more nearly complete, suppose it is being conveyed to the executive by an officer of the legislature, would any one imagine the progress of the messenger could be arrested by an injunction? The inquiry answers itself. Is there any distinction in principle or reason between such a case and the case under discussion? Clearly none. An injunction cannot be granted to prevent a legislative act by a municipal corporation. Comp. Laws, § 4650. The Code expresses the settled doctrine in this respect. Spell. Extr. Relief, § 688. If courts cannot interfere with the legislative proceedings of a city council, they certainly cannot with like proceedings in the legislature itself. If they cannot prevent the legislature from enacting unconstitutional laws, they cannot prevent it and the electors from making ineffectual efforts to amend the constitution. The fact that the present attempt is without precedent is of much weight against it. Mississippi v. Johnson, *supra.* In Indiana it was the duty of the secretary of state to deliver certain certificates and returns, contained in sealed packes, to the speaker of the house of representatives. On the claim that the certificates were wrongful and illegal, an action was begun to enjoin their delivery. The supreme court of that state decided that the court was without jurisdiction. Its opinion contains much that is pertinent to the case at bar. We quote

the following:  ''The question which faces us at the threshold
is one of controlling influence, and the answer to it must rule
our decision.    The question of jurisdiction is always one of im-
portance, but in no case is it more important than where, as
here, the extraordinary remedy of injunction is invoked to con-
trol the acts of officers holding high places in the government
of the state.    In cases like this, where the judicial department
is asked to enjoin an officer of a different branch of the gov-
ernment from performing an official act, the question is always
one of dominating force, and sometimes of perplexing diffi-
culty.  .On the one hand, no consideration of policy or conven-
ience  should  induce  the  courts to assume to exercise a power
that does not belong to them, nor, on the other hand, should
any consideration of that kind, or of any kind, induce them to
surrender .a  power  which  it is their duty to exercise.    The .
assumption of a power not vested in them would be a violation
of the constitution, since it would be a usurption of a power
conferred upon another branch of the government.    It would
disturb the system of checks and balances which the constitu-
tion has so carefully constructed, and which the courts have
ever guarded with most scrupulous care.    The question is as im-
portant as any that the courts encounter in the whole range of
judicial investigation, and it is always regarded as one of great
delicacy, to be considered with care and disposed of with cau-
tion.    The question of jurisdiction is never in any case a tech-
nical or subordinate one, and certainly it is not so in the one
before us.  .  *.  *   *    Many cases assert that courts cannot con-
trol by injunction, or by any other writ, the exercise of a purely
legislative or .executive power.  Railroad Co.  v.  Lowry, 61
Miss. 102;  Hawkins v. Governor, 1 Ark. 570;  State v. Drew, 17
Fla. 67;  State v. Towns, 8 Ga. 360;  People v. Bissell, 19 Ill.
229;  People v. Yates, 40 Ill. 126;  State v. Warmoth, 22 La. Ann.
1;  *In re* Dennett, 32 Me. 508;  Rice v. Austin, 19 Minn. 103
(Gil. 74);  State v. Fletcher, 39 Mo. 388;  Mauran v. Smith, 8
R. I. 192;  Turnpike Co. v. Brown, 8. Baxt. 490;  Railway Co. v.

Randolph, 24 Tex. 317; City of Chicago v. Evans, 24 Ill. 52; Smith v. McCarthy, 56 Pa. St. 359; Des Moines Gas Co. v. City of Des Moines, 44 Iowa, 505. The principle which underlies the decisions is well stated by our own court in Wright v. Defrees, 8 Ind. 298, where it was said: 'The powers of the three departments are not merely equal; they are exclusive in respect to the duties assigned to each. They are absolutely independent of each other.' * * * It is a rudimentary principle, acted upon again and again, that when it is ascertained that there is no jurisdiction, courts will go no further. It would not only be a vain and fruitless thing to assume to decide a question when there is no jurisdiction, but it would be a mischievous thing, because it would give an appearance of authority to that which is utterly destitute of force. Such a decision would be the merest shadow of authority, binding nobody. People v. Walter, 68 N. Y. 403. See Id. 411; Weeden v. Town Council, 9 R. I. 128." Smith v. Myers, 109 Ind. 1, 9 N. E. 695, 697, 698.

Having decided it is without jurisdiction, this court advisedly and properly refrains from expressing any opinion upon the effect of the joint resolution as a proposed constitutional amendment. It leaves that matter where it found it. It is silent upon the subject because the law does not authorize it to speak. An injunction cannot be granted. The action must be dismissed, and defendant have judgment for costs. It is so ordered, all the judges concurring.