TOWN OF CARROLTON *v.* TOWN OF NORTH CARROLTON.

[69 South. 179—68 South. 483.]

SCHOOLS AND SCHOOL DISTRICTS. *Division of district. Statutes. "May."* Laws 1912, chapter 129, providing, "that the board of aldermen of any municipality in this state constituting a separate school district may release from such district any part of the added territory lying outside of the corporate limits, on petition of a majority of the resident freeholders of the territory proposed to be released. An order shall be entered on the minutes of the board of aldermen describing that part of the added territory proposed to be released," is mandatory whenever a petition by the majority of the resident freeholders is presented, since if a statute says that a thing may be done which is for the public benefit, it shall be construed that it must be done.

APPEAL from the chancery court of Carroll county. HON. A. Y. WOODWARD, Chancellor.

For former opinion see 68 So. 483. On suggestion of error.

*Hughston & McEachern* and *T. O. Yewell,* for appellant.

*S. E. Turner* and *Monroe McClurg,* for appellee.

STEVENS, J., delivered the opinion of the court.

In view of the earnest insistence of counsel for appellees that the opinion of the court is erroneous and

because of the manifest public interest involved, we are justified in a further elaboration of the court's views of this case.

It would seem, from the able argument of counsel who filed the suggestion of error, that the opinion of the court in this case has been misinterpreted. It was never the intention of the court, by any expression in its opinion, to hold that the freeholders of the territory outside of the corporate limits of the town of Carrollton are without remedy. It is stated by counsel:

"That the people in the village of North Carrollton and their neighbors on that side of the creek would not have put themselves at the mercy of the authorities of Carrollton. Are we to depend upon the legislature to relieve us in the face of the powerful influences now combating this case?"

It is true that one statement in the opinion may have misled counsel. The statement referred to is as follows:

"The only statute which confers power to eliminate territory from a separate school district is chapter 129, Laws 1912, by which a limited power so to do is conferred upon 'the board of aldermen of any municipality of this state constituting a separate school district.' "

It was not the intention of this language to hold that chapter 129, Laws 1912, simply conferred a discretionary power upon the board of aldermen of the municipality of old Carrollton. On the contrary, we deem it necessary to the ends of justice in this case to say now that we regard the statute in question as mandatory whenever a "petition of a majority of the resident freeholders of the territory proposed to be released" is duly presented to the board of aldermen of the town of Carrollton. The statute in question expressly provides that the board of alderman "may release from such district any part of the added territory lying outside of the corporate limits on petition of a majority of the

resident freeholders of the territory proposed to be released.'' To this point in the language of the statute the only condition prescribed is the presentation of the necessary petition. The statute then expressly provides that:

''An order shall be entered on the minutes of the board of aldermen describing that part of the added territory proposed to be released.''

In construing this statute we must certainly keep in view the relief it is obviously designed to afford. By previous statutory enactments the board of aldermen of a municipality constituting a separate school district had the power to embrace within such separate school district territory lying outside of the corporate limits, and the only condition required was the assent of the ''majority of the resident freeholders of the territory proposed to be added, and the approval of the municipal authorities.'' It required the will or assent of the majority to come into the district, and also the will or assent of the municipal authorities. When such a separate school district is organized, however, members of the board of aldermen had exclusive supervision over the location and construction of the school house or houses, and in the levy of taxes necessary for the proper maintenance of the schools, as well as for the erection and repair of school buildings, and to this end they were empowered to issue bonds. It was obviously therefore, the purpose of the legislature by chapter 129, Laws of 1912, to provide a full, adequate, and speedy method of procedure by which the freeholders of the territory outside of the corporate limits might be released whenever, by any circumstance, the majority felt disposed so to do. It was never the purpose of the legislature by this act in question, to vest a mere discretion in the board of aldermen, or to leave it within the power of the board of aldermen to hold the outlying territory for an indefinite period against the will

of the freeholders involved. To so hold would be to convict the legislature of an effort to justify "taxation without representation." The authorities are uniform in construing the word "may" as imperative or man- datory in statutes of this character. In Cyc. vol. 26, p. 1591, it is stated that the word "may"—

"has been properly construed as employed in an imper- ative or mandatory sense when the legislature imposes a positive duty and not a discretion or where a public duty is involved, where a right is given or a duty im- posed, where the public interest or where a matter of public policy and not merely a private right is involved, . . . or where the statute imposes a duty or confers a power on a public officer for public purposes."

The authorities are collated in the footnotes in Cyc., and likewise in Words and Phrases, vol. 5, pp. 4421, 4422. It is stated in Words and Phrases, p. 4421:

"The word 'may' in a statute will be construed to mean 'shall' whenever the rights of the public or third persons depend on the exercise of the power or the performance of the duty to which it refers, and such is its meaning in all cases where the public interest and rights are concerned, or a duty is imposed on public officers, and the public or third persons have a claim *de jure* that the power shall be exercised."

Our own court, in the old case of *McRaven v. McGuire,* 9 Smedes & M. (Miss.) 34, quotes with approval this language:

"Where a statute directs the doing of a thing for the sake of justice, the word 'may' means the same as the word 'shall.' . . . So, if a statute says that a thing may be done which is for the public benefit, it shall be construed that it must be done."

EARL, J., in the case of *People ex rel. Conway v. Sup- ervisors,* 68 N. Y. 119, says:

"Where it is merely indifferent whether a thing shall be done or not, then the word 'may,' in an act, is usu-

ally construed to confer a permissive authority; but, where the public interest or private right requires that the thing should be done, then the word 'may' is generally construed to mean the same as 'shall.' In such a case it must be presumed that it was the legislative intent to confer the authority for the purpose of promoting the public interest or securing the private right.''

To the same effect is the language of the court and the notes to the case of *People ex rel. Brokaw* v. *Commissioners of Highways*, 6 L. R. A. 161. The court says:

''The word 'may,' in a statute, will be construed to mean 'shall' whenever the rights of the public or of third persons depend upon the exercise of the power of the performance of the duty to which it refers; and such is its meaning in all cases where the public interest and rights are concerned, or a public duty is imposed upon public officers, and the public or third persons have a claim *de jure* that the power shall be exercised.''

The supreme court of the United States in the case of *Rock Island Co.* v. *United States*, 71 U. S. (4 Wall.) 435, 18 L. Ed. 419, says:

''The conclusion to be deduced from the authorities is that where power is given to public officers in the language of the act before us, or in equivalent language (whenever the public interest or individual rights call for its exercise), the language used though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given not for their benefit, but for his. It is placed with the depositary to meet the demands of right and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless. In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose 'a positive and absolute duty.' ''

In the Act of 1912 we have, in addition to the interpretation herein given of the words "may release," the further positive mandate that "an order shall be entered" describing the "territory proposed to be released." This statute provides an orderly method of procedure, and secures the right to the board of aldermen to define, not only the territory proposed to be released, but likewise the remaining territory thereafter to be known and continued as a separate school district, and, if deemed necessary, affords an opportunity to the board to pass a new ordinance defining what might be termed a new separate school district after the release of any part of the outlying territory.

The argument of counsel to the effect that the municipality of North Carrollton has an absolute right to declare itself a separate school district, and by its declaration to that effect "sweep the field within its corporate limits of all the cobwebs of affiliation with the Carrollton district," is plausible, even persuasive. But the result of such holding would be to acknowledge the right of a coterie of citizens in the heart or center of a regular separate school district of sixteen square miles of unincorporated territory, or any other duly formed separate school district in unincorporated territory, to apply for a municipal charter, and, immediately upon their organizing the city, town, or village, to declare themselves a separate school district, and thereby utterly destroy the older or parent district, and leave it without the required area or the required taxable property, as the case might be.

We must therefore adhere to the opinion heretofore rendered, and overrule the suggestion of error.

*Suggestion of error overruled.*

SMITH, C. J. (specially concurring).

I concur in overruling the suggestion of error, but express no opinion whatever upon any right appellee may

have under chapter 129, Laws 1912. Since this proceeding is not predicated upon that statute, no right appellee may have under it is presented to us for adjudication, so that any opinion I might express relative thereto would be a mere *dictum*. Consequently I prefer to reserve any expression thereof until called for by a record presenting the question for adjudication.