COMMISSIONERS OF CAMP CREEK DRAINAGE DISTRICT *v.* JOHNSTON ET AL.

[71 South. 320.]

1. DRAINS. *Drainage district. Orders of commissioners. Effect. Establishment. Proceedings. Discretion of supervisors.*

The recital in the order of the board of supervisors that the petition praying for the formation of the drainage district had been signed by the necessary number of the landowners owning the necessary quantity of land, when the contrary was the fact, did not confer jurisdiction upon the board to proceed with the organization of the district, since an inquiry into the legality of the proceedings is expressly authorized by section 5 of chapter 198 of the Laws 1912, under which the district was being attempted to be formed.

2. SAME.

Though it be conceded that the board of supervisors had the power, under section 5 of this statute, to continue the hearing of the objections to the petition from day to day or from term to term in order that the requisite number of signatures to the petition might be obtained, the exercise of such power is clearly not obligatory.

APPEAL from the circuit court of De Soto county. HON. N. A. TAYLOR, Judge.

Proceedings for the establishment of the Camp Creek Drainage District, to which J. S. Johnston and others protested. From a judgment of the circuit court affirming the order of the board of supervisors in favor of the

protestants, the commissioners of the proposed district appeal.

At the August, 1916, meeting of the board of supervisors of De Soto county there was presented to said board a petition praying the establishment of a drainage district under the provisions of chapter 198 of the Laws of 1912. The petition alleged that it was signed by a majority of the resident landowners of the proposed drainage district owning not less than one-third of the land, as required by section 1 of said law. The board entered an order on its minutes reciting the filing of the petition, and that it was signed by a majority of the resident landowners of the proposed district owning more than one-third of the land therein, and granted the prayer of the petitioners.

At the September meeting the board levied an acreage tax to defray the preliminary expenses of organization and cost of survey and maps and profiles.

At the October meeting the commissioners and engineer made their report to the board, together with estimates of cost of construction. At the same meeting notice was given to all parties owning land in the proposed district to appear at the November meeting and present any objections they might have to the creation of the district.

At the November meeting a counter petition was presented to the board protesting against the creation of the proposed district, and there was also presented at this meeting a written protest against the establishment of the proposed district for the reason that the original petition filed at the August meeting was not signed by a majority of the landowners resident in the district and owning the required amount of land. The protesting petitioners prayed that the original petition be dismissed for want of jurisdiction, and that the action of the board subsequent to the filing of the original petition be declared null and void.

The matter was continued to the December meeting, when the board found in favor of the protestants and entered an order dismissing the whole proceedings for want of jurisdiction, and rescinding the acreage tax levy, and the commissioners of the proposed district appealed to the circuit court where the judgment of the board was affirmed.

Section 5 of the act referred to provides as follows:

"On the day appointed for the hearing the board of supervisors shall hear and determine any objection that may be offered to the report, and unless said report or the proceedings leading up thereto are shown to have been illegal, imperfect or lacking in compliance with this act, and unless a petition shall have been filed at least fifteen days before the date set for the hearing signed by a majority of the landowners, representing at least three-fourths of the land included in said proposed drainage district, petitioning the board of supervisors not to declare said proposed territory a drainage district and not to levy a drainage tax thereon for the carrying out and completion of the work as shown in the map, profiles, etc., and recommended by the engineer and commissioners, they shall declare the territory as petitioned for and recommended to be declared, a drainage district as shown in the maps aforesaid, and the same shall be designated by a name or number. The board of supervisors may make such orders as are necessary to have any imperfections or defects of said work heretofore done by the engineer and commissioners corrected and perfected, and for that purpose may continue the hearing from day to day or from term to term as may enable the original petition to be perfected and carried into effect."

*R. L. Dabney,* for appellants.

*J. W. Loch,* for appellee.

SMITH, C. J., delivered the opinion of the court.

The recital in the order of the board of supervisors that the petition praying for the formation of the drainage district had been signed by the necessary number of landowners owning the necessary quantity of land, when the contrary was the fact, did not confer jurisdiction upon the board to proceed with the organization of the district (*Supervisors* v. *Buckley,* 85 Miss. 713, 38 So. 104), and inquiry into the legality of the proceedings by which the formation of the contemplated district was begun, when the report of the engineer and commissioners comes on to be heard, is expressly authorized by section 5 of chapter 198 of the Laws of 1912, under which the district was being attempted to be formed.

Conceding for the sake of the argument, but without intending to express any opinion relative thereto, that the board of supervisors had the power, under section 5 of this statute, to continue the hearing of the objections to the petition "from day to day or from term to term" in order that the requisite number of signatures to the petition might be obtained, the exercise of such power is clearly not mandatory.

*Affirmed.*