# SUPREME COURT OF MISSISSIPPI

## AT THE

## OCTOBER TERM, 1916.

TOWN OF NORTH CARROLLTON ET AL. *v.* TOWN OF CARROLL-
TON.

[73 South. 812, Division A.]

1. INJUNCTION. *Right to remedy. Existance of other remedy.*
   Where the aldermen of a town refused to act upon petitions for
   withdrawal of a part of a school district and were about to
   issue bonds for the school district, notwithstanding the fact that
   the petitioners had a remedy by *mandamus* to compel action
   upon their petitions, this did not cut them off from the right to
   injunction to restrain the issuance of bonds until the petitions
   were acted upon.

2. SCHOOLS AND SCHOOL DISTRICTS. *Alteration. Powers of supervisors.*
   Under Laws 1912, chapter 129, empowering boards of aldermen
   to release portions of a school district, their jurisdiction does
   not depend alone upon the recital in the petition of jurisdiction-
   al facts, such as the signing by a majority of the resident fee-
   holders, but this fact may appear from the completed record.

3. SCHOOLS AND SCHOOL DISTRICTS. *Dissolution. Petition. Descrip-
   tion. Sufficiency.*
   A description in a petition for release of territory from a school
   district describing it as "that territory comprising the town of
   North Carrolton with other territory consisting of that part of
   the district north of a creek and outside of the limits of the
   town of North Carrolton" is a sufficient discription upon which
   to grant the relief prayed for.

APPEAL from the chancery court of Carroll county.
HON. A. Y. WOODWARD, Chancellor.

Bill for injunction by the town of North Carrollton
and others against the Town of Carrollton. From a
decree sustaining a demurrer to the bill and dismissing
it, petitioners appeal.

The facts are fully stated in the opinion of the court.

113 Miss.]           (1)

*S. E. Turner, S. D. Neil* and *Monroe McClurg,* for appellant.

A petition actually signed by a majority of those residing within the territory added to the Carrollton separate school district, praying that such territory be released from such separate school district, was filed with said board, but it appears that the petition de-scribes more territory than was actually added to such separate school district, and, in addition, that the petition does not, on its face, recite that it was signed by a majority of the resident freeholders of such district. It is admitted by the demurrer that the petition was in fact signed by a majority of the resident freeholders of the added territory. The statute in question, chapter 129 of the Laws of 1912 provides:

The board of aldermen of any municipality in this state, constituting a separate school district, may release from such district any part of the added territory lying outside of the corporate limits, on petition of a majority of the resident freeholders of the territory proposed to be released. An order shall be entered on the minutes of the board of aldermen describing that part of the territory proposed to be released."

This statute has by this court been construed to be mandatory. The court holding that when such a petition was filed, the board of aldermen had no discretion in the matter, but on the contrary it became, and was, their duty to enter an order on the minutes releasing that part of the added territory asked to be released. Note the language of this court in construing the statute in the case of *Town of Carrollton* v. *Town of North Carrollton,* 69 So. 179.

It is true that in this matter the board exercises a special and limited-jurisdiction, and that, before the board can act, the necessary jurisdictional facts must appear, but in this proceeding, as stated, the court below was not reviewing the action of the mayor and

board of aldermen in the matter as appears from the
record; on the contrary it was called upon to require
the board to act as it should have acted, and in the
determination of that question, the lower court should
have placed itself in the position of the board and
acted on the facts as they were presented to that board.

In the instant case, it appears from the petition that
the territory added and proposed to be released is
described. And while it is true that more territory
than that embraced within the district is described in
the petition, still all of the territory that is embraced
within such district is described in it. Therefore, it can-
not be claimed that simply because the petitioners pray
that school district be released therefrom, that the
petitioners do not pray that the territory which is
included in such district be released, if, as a matter of
fact, the petition also includes that territory. The
statute on its face requires the board to ascertain the
territory to be eliminated. So it must be conceded that
a petition has been filed, praying that this added terri-
tory be released from the Carrollton separate school
district, notwithstanding the fact that the petition seeks
to have released also territory which is not incor-
porated in such district. The additional territory
described in the petition should simply be treated as
surplusage.

The bill in this case charges and the demurrer ad-
mits, that this petition was signed by a majority of the
resident freeholders of the territory proposed to be
released. It is not charged that the petition on its
face recites that it is signed by a majority of such resi-
dent freeholders, but on the contrary, it is simply
charged that, as a fact, the petition is so signed. If
it be denied the statute directs the board to inquire
into that fact. Thus, it appears to the court that a
petition of a majority of the resident freeholders of the
territory purposed to be released was presented to the

board praying that such added territory be released from the Carrollton separate school district.

These are the facts charged in the bill, and admitted by the demurrer, and on these facts we contend that the lower court should have ordered the board to enter an order on its minutes releasing that part of the added territory covered by the petition and praying to be released.

As to whether the petition itself should recite that it was signed by a majority of the resident freeholders of the added territory, before the board of aldermen could acquire jurisdiction, we direct the attention of the court to the following:

It is conceded that in this matter the mayor and board of aldermen exercised a special and limited jurisdiction. It is further conceded that, before the board can act in the premises, it must be made to appear that these necessary jurisdictional facts exist; it is likewise conceded that if the board had acted in the matter and this was a collateral attack, all of the necessary jurisdictional facts would necessarily have to appear affirmatively in the record of the proceedings of such board; otherwise their action would be void. It is also conceded that if the statute had required the petition to recite that it was signed by a majority of the resident freeholders of such added territory, this recital would have to appear in the petition—otherwise the board would not have jurisdiction. But, as stated, this is not a collateral attack on the proceedings of the mayor and board of aldermen in a matter in which they have acted and in which the validity of their action is to be determined from the face of the record made by them. On the contrary, the lower court should have acted in the premises, just as the board should have acted when the petition came up for hearing, and all of the evidence with reference to its having been signed by a majority of the resident freeholders of such added territory had been introduced.

It will be borne in mind that the board has not acted on the petition and therefore, the validity of its action in the premises is not called into controversy. The board declined to act, notwithstanding the fact that the law made it mandatory that it should act. The Complainants below pray for an injunction requiring the board to perform the duty that the law provides that should be performed by it, namely; to determine whether a petition actually signed by a majority of the resident freeholders of this added territory has been presented to it praying that such added territory be released from the Carrollton separate school district. These facts do appear. The bill so charges and the demurrer admits it. But the solicitors for the defendants below contend that the board was without jurisdiction to act in the premises. Their contention is not that the petition was not in fact, signed by a majority of the resident freeholders of such added territory, but on the contrary, that the petition itself does not so recite, or rather on its face show, that it was signed by a majority of the resident freeholders of such added territory. By the demurrer they admit that, as a fact, the petition was signed by such majority, but their contention is that before the board acquires jurisdiction the petition must, on its face, show that it was so signed. As to this we take issue with solicitors for appellees.

In support of their contention in the court below solicitors for appellees relied on the following cases: *McCreary* v. *Rhodes & Silk,* 63 Miss. 308. This case came on for hearing in the circuit court on *certiorari* from the action of the municipal authorities of West Point, in granting a license to retail liquor to appellees. That court, as did the supreme court, passed upon the validity of the action of the municipal authorities from the record made by it sent up on *certiorari.* From this record it nowhere appears that the petition for a license, on its face recommends the applicants,

"to be of good reputation, and a sober and suitable person to receive such license." Nor did the petition, or other record of the proceedings, on its face show that the applicant was a "resident" of the municipality. Section 1103 of the Code of 1880, which authorized the granting of license, provided that the applicant should present a petition recommending him to be "of good reputation, and a sober and suitable person to receive such license." And by section 1100 of the same Code, it is provided that the corporate authorities of a municipality might grant a license to a person resident in such city or town. Therefore the supreme court because the petition did not recommend the applicant to be a sober and suitable person to receive such license, and because neither the petition, nor the other record of the proceedings sent up, showed that the applicant was a resident of the municipality, said:

"In this petition for license Rhodes and Silk are not recommended to be of good reputation, nor is it shown in the petition, or by the record returned by obedience to the writ of *certiorari* that they, or either of them, were residents of the City of West Point. Without such recommendation and residence, the mayor and selectmen had no authority to grant them license. It was contrary to law for them to do so." Further: "The jurisdiction of the mayor and selectmen in the premises was special and limited, and could be lawfully exercised only in strict accordance with the conditions and limitations imposed by the statute. In this case no presumption can be indulged in favor of their proceedings, but all jurisdictional facts must affirmatively appear from the record, or their proceedings must be adjudged void. *Roof* v. *McFerrin*, 37 Miss. 17; 75 Am. Dec. 49; Powell on Appellate Pro., 353-354."

We wish to call special attention to the fact here that in the case above quoted from the supreme court did not hold as a matter of fact that it was necessary

that the petition, of itself, and on its face, as insisted on by defendants below, should show that the applicant was a resident of the municipality; the court simply says that the petition does not recommend the applicant to be of good reputation, and a sober and suitable person to receive such license. Therefore, as the law required the recital of this fact in the petition, the board was without jurisdiction. *McGee* v. *Bell,* 63 Miss. 455; *Levee Commissioners* v. *Allen,* 60 Miss. 93; *Craft* v. *De Soto County,* 79 Miss. 618; *State* v. *Morgan,* 79 Miss. 659; *Telephone Co.* v. *Morgan,* 92 Miss. 478.

The bill charges, and the demurrer admits that as a matter of fact the petition was so signed, and therefore we say that the lower court should have required by a mandatory injunction, the board to enter an order releasing such territory from the separate school district. On this question, we direct the attention of the court to section 1707 of the Code of 1906, which is in substance the same as section 1610 of the Code of 1892. This section, as to the principle of law involved, is similar to chapter 129 of the Acts of 1912.

Section 1610 of the Code of 1892 was called to the attention of this court in the case of *Ferguson* v. *Monroe County,* 71 Miss. 524: However, it will be noted that the court did not hold that it was necessary for the board to determine whether the petition recited that it was signed by one-third of the qualified electors of the county, but simply that it was necessary for the board to determine whether, as a matter of fact, the petition was so signed. And if it was so signed, the board acquired jurisdiction to proceed.

If the validity of the board's action is determined from the record, that is to say the record made by the board, or a record of what occurred, sent up in obedience to a writ of *certiorari,* the necessary jurisdictional facts must appear affirmatively of record. But if the matter is triable *de novo,* it is only necessary that the jurisdictional facts be shown to exist. If

the fact be required to be recited in the petition, the petition must show it, but if, as a matter of fact, a certain number are required to sign a petition, then proof of that fact on a trial *de novo* is sufficient. *Lester* v. *Miller,* 76 Miss. 309.

By referring to chapter 129 of the Laws of 1912, the court will see that it is not required, as was required by the statute construed by the court in the several cases cited, that the petition itself should recite certain facts, but simply that the petition should be signed by a majority of the resident freeholders of the added territory. Not that the petition should recite, but simply, that as a matter of fact, it should be so signed. When such a petition so signed was presented to the mayor and board of aldermen of the town of Carrollton, it not only acquired jurisdiction to act, but as has been stated by this court, it was required to act. It was therefore the duty of the board to ascertain, as a matter of fact, whether the petition was signed by such a majority of the resident freeholders, and if it did so appear, then it became its absolute duty to enter an order releasing that territory from the Carrollton separate school district. If this had been a mandamus proceeding there would be no doubt but that the court below would have required the board to act, and we will show, in the next succeeding paragraph, not only that the lower court had jurisdiction by mandatory injunction to require the board to act, but that it was its duty to do so in order to prevent irreparable damage to appellants.

As to whether appellants were entitled to the relief prayed for raises the question: First, as to whether the court below had jurisdiction to grant a mandatory injunction in that character of case; and second, as to whether this was a proper case for the exercise of its power.

That the lower court had jurisdiction in a proper case to grant a mandatory injunction, commanding the

performance of some positive act, there can be no doubt. It is true that before such an injunction will be granted, it must appear that irreparable injury will otherwise result, as to which the law affords appellants no adequate relief. On this subject we direct the attention of the court to 22 Cyc., page 742, and cases cited thereunder.

If the board had acted as the law required it to act, then this added territory would be released from the Carrollton separate school district, and the board would be without authority at law to sell the bonds of the district as if this territory were a part of it. The board proposes selling the bonds of the district as at present constituted, and not the bonds of the district with the added territory released. The appellants were therefore entitled, not only to have the added territory released, but the board enjoined from selling the bonds of the district as if the added territory formed a part of it. There is no better settled principle of equity than that principle to the effect that "equity regards that as done which ought to be done." *Harding* v. *Cheatman*, 25 Miss. 41; *Green* v. *Lake*, 54 Miss. 540.

In conclusion, we will say that the appellants do not want their property taxed to pay for the bonds, the proceeds of which will be used for building a schoolhouse in the town of Carrollton, the original school district. The law provides that upon a petition of a majority of the resident freeholders of the added territory such territory shall be released from such separate school district. They get up and present this petition to the mayor and board of aldermen of the town of Carrollton. The law required that board to act on that petition and release the property in the petitioning territory from the school district, but this the board refused to do, and proceeded in the matter of selling the bonds of the separate school district, and thus attempting to charge the petitioning terri-

tory with the payment of the same. What course was then open to appellants? That irreparable injury must result is apparent. They therefore pray on this appeal that the board of mayor and aldermen of the town of Carrollton be required to do that which the law expressly says that they shall do, and prohibited from doing that which the law says they are not permitted to do, had they done their duty firstly.

*Hughston & McEachern,* for appellee.

In relation to the petitions filed with the mayor and board of aldermen of the town of Carrollton for the release of certain territory from the Carrollton separate school district and the attempt on the part of the complainants, to compel the said board to act on said petitions, the defendants below assigned, among others, the following grounds of demurrer:

"Fifth, exhibits "E" and "F" to said bill fail to show affirmatively that they are signed by a majority of the freeholders of the territory sought to be released from the Carrollton separate school district."

"Sixth, the said bill fails to show that the records of the proceedings before the mayor and board of aldermen of the town of Carrollton seeking to release territory from the Carrollton separate school district at any place shows affirmatively that said petitions were signed by a majority of the resident freeholders of the territory sought to be released."

"Seventh, exhibit "E" to said bill fails to show which ones of said petitioners are resident freeholders of the Carrollton separate school district and which are not."

"Eighth, said exhibit is a petition of the resident freeholders of the town of North Carrollton as now laid out and bounded and professes to seek the release of the town of North Carrollton from the Carrollton separate school district when the bill shows that the

town of North Carrollton as now laid out and bounded is not a part of the Carrollton separate school district but that only certain parts of its territory is such part."

"Ninth, exhibit "F" to said bill fails to show on its face that the same is signed by any resident freeholders of said territory."

"Tenth, both of said petitions filed as exhibits "E" and "F" to said bill fail to describe the territory sought to be released with such certainty that the mayor and board of aldermen of Carrollton, acting for said Carrollton separate school district could pass an order under chapter 129 of the Acts of 1912."

It will be noticed in this behalf that the complainants are seeking a release of territory from the Carrollton separate school district under chapter 129 of the Laws of 1912. It is conceded by complainants that the mayor and board of aldermen of the town of Carrollton in acting on the authority therein conferred has limited powers and that the rules applicable to courts of special and limited jurisdiction control. The rule of such courts is that all of the jurisdictional facts must appear of record in the proceedings of said court before its actions are held to be valid and in the absence of the record showing such jurisdictional facts, the action of said court will be held to be void and of no effect. The complainants in their bill made exhibits of all that was of record in the proceedings for the release of the said territory before the mayor and board of aldermen and nowhere in said records was there any affirmative showing that a majority of the resident freeholders of the territory sought to be released had signed said petitions and in the absence of record showing there is nothing to give the said board jurisdiction over the subject-matter. *Root* v. *McFerrin*, 37 Miss. 17; *Bolivar County* v. *Coleman et al.*, 71 Miss. 832. It is true that the bill itself recites that it was an actual fact that a majority of

the resident freeholders signed said petition, but it does not recite that the records before said mayor and board of aldermen showed affirmatively that a majority of the resident freeholders signed said petition. Having made the records before the mayor and board of aldermen exhibits to the bill, the said exhibits became a part of the bill as if copied in the same and no statement in the bill can alter their essential nature or supply any defect in the exhibits themselves. Code 1906, section 579; *House* v. *Gumble,* 79 Miss. 259; *McNeill* v. *Lee,* 79 Miss. 455. Consequently the court in passing upon its power to compel another court to act, must look to the record made before that court and not to evidence *aliunde* and a statement in the bill that as an actual fact a majority had signed the said petitions, is without avail in this proceeding because a record cannot be altered and changed by parole testimony and complainants are compelled to stand on the record made before the mayor and board of aldermen before they can compel any action on the part of anybody. We submit, therefore that the argument of counsel for appellants that in this trial the chancellor had the power to try the same *de novo* is erroneous. We submit also that if the mayor and board of aldermen of the town of Carrollton had acted upon said petition and granted the relief as prayed for and had in their order found nothing more than stated in said petition the said proceedings would have been absolutely void and could not have been enforced.

Our courts have stated loosely time and time again that the demurrer admits the truth of all facts as stated in the bill, but such is not an accurate statement of what is admitted. The correct statement is that the demurrer admits the truth of all allegations in the bill which are well pleaded for the purpose of demurrer alone. 16 Cyc., page 277; *Bowers* v. *Chess, etc., Co.,* 83 Miss. 222.

The third ground of demurrer was as follows: "The said bill affirmatively shows that an injunction was not the proper relief for complainants and if they are entitled to any relief whatever they have other and adequate remedies." Counsel for appellants in their brief admit that a mandamus would lie to compel the mayor and board of aldermen of the town of Carrollton to act on said petition and they contend that in the opinion on the suggestion of error filed in the original cause, which said opinion is found in 90 Miss. page 494, that the majority of the court held that chapter 129 of the Laws of 1912, was mandatory and that upon the presentation of the proper petition that the mayor and board of aldermen had no discretion but were compelled to act. If such is the case an injunction would not lie because mandamus would be the proper remedy and adequate and the release of said territory would date back to the filing of the petition.

Another objection raised by the demurrer is that the bill fails to so describe the territory sought to be released with such certainty that the mayor and board of aldermen could pass an order required by chapter 129 of the Laws of 1912. In other words, the petition is so vague and indefinite in the description of the property sought to be released that no order could be predicated on it that would describe the metes and bounds of the territory and this is required to be done by the statute authorizing the release.

Again, the petitioners, in exhibit "F", recognizing the fact that a description of the territory was essential, attempted to excuse themselves from the same; but there is no showing that the minute books of said town would secure for them the correct metes and bounds of the territory they desire to have released. If they are the owners of the property they certainly know the description of what they own and a description of the adjacent territory and they have full

knowledge of the metes and bounds of the territory they desire to be released. The mayor and board of aldermen of the town of Carrollton are not presumed to know their thoughts, their wishes and their desires except through their petition presented to them, besides they fail to state that they are residents of said territory or of the Carrollton separate school district.

We submit in conclusion that the chancellor was eminently correct in sustaining the demurrer of appellees to the bill of appellants.

*Wm. C. McLean,* for appellee.

Three propositions, which we submit are decisive of this case upon demurrer, have already been clearly established by this court, to wit: First, that only by virtue of the statute can the territory be released; second, that all jurisdictional facts must affirmatively appear from the petition in the cause; and, third, that these jurisdictional facts cannot be waived.

It is well settled that where there is a conflict between the allegations of the pleadings and the exhibits thereto the allegations of the exhibits must control when a demurrer is interposed. Section 576, Code of 1906, and authorities cited thereunder. Therefore, when we come to consider the demurrer to this bill we must look to the exhibits and not to the allegations of the bill. The bill alleges that "a majority of the resident freeholders" petitioned for the release, and refers to the exhibits to the bill as evidence of this fact, but when we look to these exhibits we find that there is no allegation or statement that those who signed the petition constituted a majority of the resident freeholders. In truth and in fact, one of the exhibits does not contain even the averment that the petitioners are resident freeholders. Now, since the rule is well settled that all jurisdictional facts must affirmatively appear from the record before the court

acquires jurisdiction, it must follow that the board of mayor and aldermen did not even acquire jurisdiction over this matter. Indeed, the board did not have power to even consider this petition at all, and it was its bounden duty to decline to enter into a consideration of the question, since the petitions did not recite that those who signed them constituted a majority of all, who, by law, were authorized to ask the release; and if the board had considered the petitions and granted the release, its order would have been null and void as it did not have jurisdiction so to do. The rule is universal and without exception that the allegations of the pleader are construed most strongly against him, and that unless he makes out a case on his own pleadings, he has no case; and, further, that one cannot make one case on paper, and another by proof. One other elementary rule is that parole proof is not admissible to either vary, contradict, add to, or take from, a record. Therefore, if, as a matter of fact, a majority did sign the petition, parole proof would not be admitted to add to this record made before the board of mayor and aldermen, and of course the complainants must stand or fall upon the case they made before the board, and not upon the case they are now attempting to make in the court. The rule seems to be universal that jurisdictional facts must affirmatively appear in the petition or by averments and proof. *Rogers* v. *Hahn,* 63 Miss. 580; *McGee* v. *Beall,* 63 Miss. 457; *McCreary* v. *Rhodes & Silk,* 63 Miss. 312; 11 Cyc., 696, note 29; 7 Ency. Pleading and Practice, page 516; 13 Cent. Dig., page 1953, sections jj, j, k, 11, page 1955, sec. yy.

Indeed this court in *Craft* v. *De Soto County,* decides this specific question. And as was said by this court again in *Telephone Co.* v. *Morgan,* 92 Miss. 483: "As authority for the organization of the court, there must be filed with the clerk an application which shows on its face that the petitioner seeking to have the court of

eminent domain organized, is entitled to exercise the right of eminent domain, and if it fails to do this, it fails to state facts conferring jurisdiction on the clerk to issue the order to organize the court, and the tribunal organized by him without the statement of these jurisdictional facts is not a court.'' This is conclusive of the rightfulness of the demurrer. This petition signed by certain persons but not alleging that they constituted a majority of the resident freeholders, was not authority for even convening the board of mayor and aldermen, and even after it convened, there being no allegation that the petitioners constituted a majority, etc., the court was not a court. The board, or court, of course, could not take judicial notice that those who signed the petition constituted a majority of the resident freeholders. We deem it unnecessary to discuss this question further, and, consequently, we insist that the decree of the lower court should be affirmed.

We insist that under the facts shown in the bill and the order of the board of mayor and aldermen that the petitioners did not have the right to have the territory released, for the reason that under the Act of 1912, chapter 129, it was a matter of discretion with the board to allow the release or not as it might have seemed to the court to be to the best interests of the public. It is true that this court in *North Carrollton v. Carrollton*, 109 Miss. 494, says that the word ''may'' used in this Act of 1912 means ''shall'', yet it is submitted, as was said by Judge Smith in that case, that the whole of that opinion was *dicta*, pure and simple. There was nothing in that case which called for such a ruling. It was delivered simply upon a suggestion of error without the appellant having an opportunity to make an argument, and we here submit that this *obiter* opinion is erroneous and should be overruled. The authorities relied upon by the court in that opinion are sound, but the application by this

court of the principles therein announced have no bearing upon the subject.

Thus it is clear that the legislature had a clear conception of the difference in meaning between the words "may" and "shall". It is further submitted that under the former and repeated rulings of this court that the word "may" in this statute should be construed to mean just what it says. In *Berkins* v. *Ledbetter,* 68 Miss. 327, this court holds that under the liquor law of 1889, which provides that the board of supervisors shall have power to grant license upon a petition signed by a majority of the voters, the granting of such license is never obligatory but in the discretion of the authorities; they may refuse it although all provisions of law have been complied with. Perhaps the case which in this state called for the most extensive research of the authorities and one which commanded the public interest more than any which has been decided by this court in recent years, is the justly celebrated case of *State* v. *Henry,* 87 Miss. 125, where this very question was exhaustively argued and considered by the court, and it is submitted that the reasoning of the court in that case is conclusive of the question here presented.

We especially request that this court will pass upon and decide this question, and overrule what is respectfully submitted as a totally erroneous view and misconception of the meaning of the legislature in enacting chapter 129 of the Laws of 1912.

SMITH, C. J., delivered the opinion of the court.

The towns of Carrollton and North Carrollton, situated in Carroll county, are separated from each other only by a creek known as "Big Sand." In 1902 the town of Carrollton declared itself a separate school district, and upon petition of the required number of citizens of certain adjoining territory, a portion of which

was within the corporate limits of North Carrollton, such territory was annexed to and became a part of such separate school district. The house in which the district school was taught, and which was situated within the corporate limits of the town of Carrollton, was destroyed by fire in May, 1914. Shortly thereafter the mayor and board of aldermen of the town of Carrollton gave notice to the taxpayers of the separate school district that they would issue bonds of the district for the purpose of erecting a school building on the site of the one destroyed by fire. Whereupon the board of aldermen of North Carrollton, by order entered upon its minutes, attempted to withdraw from the district the territory thereof situated within the Town of North Carrollton, which order was declared void by this court in the case of *Carrollton* v. *North Carrollton*, 109 Miss. 344, 494, 68 So. 483, 69 So. 179. On the day that case was decided by this court, which was the 17th day of May, 1915, a petition was filed with the board of aldermen of the town of Carrollton by a number of (quoting now therefrom) "citizens and resident freeholders of the town of North Carrollton as now laid out and bounded, and all of which said corporate limits of said town of North Carrollton being a part of the territory comprising what is known as the Carrollton separate school district, do hereby petition the mayor and board of aldermen of the town of Carrollton, being the governing body of the said Carrollton separate school district, to release the territory comprising the town of North Carrollton from the said Carrollton separate school district, as provided for in chapter 129, Act of 1912."

Also, on the same day another petition was filed with the board of aldermen, which recited that:

"We the undersigned freeholders of all that part of the Carrollton separate school district that lies north of Big Sand creek, and outside of the corporate limits of the town of North Carrollton as now laid out and

bounded, do hereby petition your honorable body to release said territory above described from the Carrollton separate school district, as provided for in chapter 129, Acts of 1912. Your petitioners further show that they have through several parties requested the use of the minute books of said town for the purpose of securing the correct metes and bounds of the said territory, but have been refused the use of said books by the clerk of said board, and, being unable to get same, present said petition in above form."

These petitions were not acted upon at the regular June and July meetings of the board of aldermen, but were each time continued to the next regular meeting in the month following. On June 22, 1914, a special meeting of the board of aldermen of the town of Carrollton was called for Monday, June 22, 1914, at three o'clock p. m., for the purpose of doing whatever might be necessary "with reference to the issuance of school bonds of the separate school district of Carrollton." Whereupon the town of North Carrollton, and several resident citizens and taxpayers thereof, and also several resident citizens and taxpayers of the territory embraced within the separate school district, and lying without the corporate limits of both towns, exhibited a bill in the court below against the town of Carrollton and members of the board of mayor and aldermen thereof, praying that the mayor and board of aldermen of the town of Carrollton "be restrained from further continuing or delaying action upon said petitions, but that they enter an order as required by law . . . at their August regular meeting, on the 3d day of August, 1915, releasing said petitioners as prayed in said petition," and that they be enjoined from issuing the comtemplated bonds of the district "until a final hearing of this cause." The bill, in addition to the facts herein before stated alleged that the petitions filed with the board of aldermen of the town of Carrollton were

both signed by a majority of the resident-freeholders of the territory sought to be released, and that the refusal of the board of aldermen of the town of Carrollton to act upon the petitions was willful and capricious, and for the purpose of enabling it to issue bonds of the district before the territory thereof lying outside of the corporate limits of the town of Carrollton should be eliminated therefrom. It contained also an allegation "that an injunction suit was obtained and served in this matter by the town of *North Carrollton et al.* against *The Town of Carrollton,* No. ——on the files and dockets of this court and referred to as a part hereof." (The injunction suit here referred to is, we presume, the one disposed of by this court on May 17, 1915, and in which a suggestion of error was pending at the time of the filing of the bill. This suggestion of error was overruled on a later day, as appears from 109 Miss. 494, 69 So. 179.)

A demurrer interposed to the bill was sustained, and the bill dismissed; and the appeal to this court is from the decree so doing. The grounds of the demurrer which are argued in the brief of counsel for appellee may be reduced to four: First, that the bill affirmatively shows that an injunction suit is now pending, involving the matters here in controversy; second, the cause is not one of equitable cognizance; third, that it does not affirmatively appear from the petitions filed with the board of aldermen of the town of Carrollton that they were filed by "a majority of the resident freeholders of the territory proposed to be released;" fourth, that the petition of the resident freeholders of the town of North Carrollton prayed for the release of that town from the separate school district, when it appears from the bill that only a part of the territory now included in the corporate limits thereof is a part of the school district; consequently the land sought to be released is imperfectly described.

We do not understand counsel to seriously insist upon the first ground of demurrer as herein stated, and consequently will pretermit any discussion thereof.

In support of the contention that the record does not present a cause of equitable cognizance, it is said by counsel for appellee that a writ of mandamus, directing the members of the board of aldermen to act upon the petitions, is appellants' proper remedy, in event they are entitled to any relief at all. It may be true that, if action upon their petitions was the only relief desired by appellants, a proceeding by mandamus would meet the demands of their situation, but an injunction was necessary in order to restrain the issuance of the bonds until these petitions could be acted upon, and since a court of equity has jurisdiction of a part of the controversy, it will draw to itself and adjudicate the whole of it.

In support of the third ground of demurrer as herein set out, we are referred to a number of cases holding that judgments of boards of aldermen and of supervisors are void unless the jurisdictional facts affirmatively appear from the record made in the proceedings wherein such judgments are rendered. In none of these decisions was it held that, where such boards can act only on a petition signed by a particular number of a particular character of persons, it must appear from the petition itself that it is signed by the required number, but simply that this fact must appear from the completed record. We do not regard the case of *Telephone Co.* v. *Morgan,* 92 Miss. 483, 45 So. 429, as in point here, because, if for no other reason, the statute upon which the proceeding in that case was based required that the right of the person invoking it "must be shown in the application" therefor. The jurisdiction of a board of aldermen to act upon a petition filed with it, under chapter 129, Laws 1912—the statute upon which the petitions here in controversy are predicated—depends, not upon a recital in the

petition that it is signed by a majority of the resident freeholders of the territory sought to be released from a separate school district, but upon the petition being in fact signed by a majority of such residents, which fact is for the determination of the board upon proper evidence. *Ferguson* v. *Monroe County,* 71 Miss. 524, 14 So. 81; *Commissioners, etc.,* v. *Johnston,* 71 So. 320.

The description in the petitions of the territory sought to be eliminated from the district is sufficient to enable the board of aldermen to comply with the provisions of the statute under which they were filed.

Reversed and remanded, with leave for appellee to answer within thirty days after the filing of the mandate in the court below.

*Reversed and remanded.*