HOFER et al., Appellants v. BRIDGEWATER INDEPENDENT SCHOOL DISTRICT et al., Respondents

(81 N.W.2d 300)

(File No. 9613. Opinion filed March 4, 1957)

**Woods, Fuller, Shultz & Smith,** Sioux Falls, for Plaintiffs and Appellants.

**Danforth & Danforth,** Sioux Falls, for Defendants and Respondents.

ROBERTS, J. Defendants are the Bridgewater Independent School District No. 18 of McCook County and the members of its board of education. Plaintiffs are resident taxpayers of the district. The complaint alleges that on March 22, 1956, plaintiffs filed a petition with the County Board of Education of McCook County seeking the detachment of all territory situate outside the corporate limits of the City of Bridgewater from defendant independent school district and its inclusion in adjoining common school districts; that at an election held on March 23, 1956, in defendant district, for the purpose of voting upon the question of issuing bonds in the amount of $110,000 more than three-fifths of those voting cast their ballots in favor of the proposal; that the petition for change of boundaries was considered by the Board of Education of McCook County, but no action was taken thereon; and that if the bonds are sold and issued, an irrepealable tax will be levied against all the lands of the plaintiffs in the territory sought to be detached. Plaintiffs ask that defendants be enjoined from issuing the contemplated bonds until the county board has acted upon the petition for change of boundaries.

We here set forth the two statutes that are pertinent to an understanding of the right asserted by plaintiffs. Section 4 of Chap. 10 of Chap. 41, Laws 1955, provides in part as follows: "At or before the issuing of any bonds the school board shall provide for the collection of an annual tax sufficient to pay the interest and principal thereof when due, for the entire term of years for which said bonds are to run, by proper resolution, copy of which shall be filed with the county auditor. All such levies when legally made shall be irrepealable until such debt shall be paid and shall be exclusive of the maximum levy provided for other school district funds."

Section 20 of Chap. 8 of Chap. 41, Laws 1955, provides as follows: "The county board shall have the power at its discretion upon proper petition as hereinafter provided to change any boundary of any school district within its county without a vote of any electors providing the boundary change does not create any more or any less school districts than those already in existence and **providing such change**

meets the requirements and limitations for reorganization (emphasis supplied). All applications for a change of school district boundaries must be made to the county board of education in the form of a petition signed by over fifty per cent of the electors residing in the area to be transferred by such boundary change or by the signatures of fifty electors of such area, whichever is the lesser. Any boundary change made under this section of the law shall not leave any school district with less than the minimum requirements of a school district as provided in this chapter."

It appears from the minutes of the county board of March 29, 1956, that after discussion of an opinion of the Attorney General to the effect that a master plan must first be adopted before boundary changes can be made a motion that the petition of plaintiffs be "tabled for now" prevailed.

Insofar as material here, the trial court found that "extreme doubt exists that such petition will ever be granted, and that it would not be equitable or proper to hold up the essential enlargement of the wholly inadequate present school facilities and deprive the students of proper educational facilities, pending the possible final adoption of a so-called master plan of county school district reorganization, as contemplated under Chapter 41 of the Session Laws of 1955, and that there are many more people involved in the need of the building and the enlargement of the present school facilities, including the construction of the proposed grade school than are affected by the proposed exclusion from the boundaries of the school district of the land involved, when the right and possibility of such exclusion is very small and remote."

Plaintiffs appealed from the judgment of dismissal. Plaintiffs gave undertaking in the sum of $7,500, conditioned for the payment to defendants of resulting damages, and the interlocutory injunction restraining the defendants from selling and issuing the bonds was continued in force and effect pending final determination on appeal.

■ The power delegated to the County Board of Education to change boundaries of school districts upon the petition of a majority of electors residing in the territory

sought to be transferred may be exercised only under the circumstances prescribed. The exercise of the power is subject to the restriction that boundary changes meet "the requirements and limitations for reorganization". This has reference to the new procedure provided for the formation and classification of school districts. The legislature in 1951 passed an act to "Prescribe the Procedure by Which Reorganization of School Districts may be Achieved". Chap. 81, Laws 1951. The objects which it sought to accomplish were therein set forth in a legislative declaration of policy: "That the establishment and maintenance of a general, uniform, and thorough system of public schools is the traditional and current policy of the State of South Dakota; that improvement in the school districting of the State will provide a more equalized educational opportunity for public-school pupils, will achieve greater equity in school tax rates among the inhabitants of the various now-existing school districts, will provide a more effective use of the public funds expended for the support of the public-school system; That existing statutes with regard to school districting and the reorganization of school districts are inadequate to effectuate the needed improvement; That modifications in the statutory provisions for school districting and the reorganization of school districts provided in this Act are necessary in order to assure the future maintenance of a more uniform and thorough system of public schools in the State; That local electors have an interest in the boundaries of the school district in which they reside and will exercise their privileges, as herein provided, to the end of establishing an efficient and economical school district plan best suited to local conditions; That the State Superintendent, Committees, and the public officers charged with authority under this Act will perform their duties wisely in view of the objective of this Act as set forth in the Preamble."

The statute revising the school laws, Chap. 41, Laws 1955, repealed the 1951 Act, but re-enacted provisions for reorganization and classification of school districts with amplification. The present statute creates what is known as the County Board of Education consisting of seven members elected in each county. Upon the county board is imposed

the duty to submit to the Superintendent of Public Instruction a master plan for the reorganization of school districts. In preparation of the master plan, the county board is required to give consideration to the number of pupils attending school in each district, existing and proposed; to the assessed valuation per pupil; to the future use of existing buildings and equipment; to natural community areas; to location and condition of highways; to transportation of pupils; to geographic and economic conditions within the county; and to such other matters as afford greater equalization of educational opportunities, more efficient and economical administration of schools and a more equitable distribution of public school revenue.

The Superintendent of Public Instruction is required to submit the master plan of a county to the State Board of Education consisting of seven members. With the exception of the attachment of unorganized territory to adjacent districts and the automatic inclusion of territory by the extension of town or city boundaries, the reorganization of school districts must meet the minimum standards fixed by the state board. If the master plan is satisfactory,the Superintendent of Public Instruction is required to so notify the county board and upon request to assist in revising the plan. After a master plan has been prepared and approved, the county board can make no changes in the boundaries separating the proposed districts without the adoption and approval of a new master plan containing the changes. The 1955 revision provides that all or any part of an approved master plan in effect may be submitted from time to time to a vote of the electors of the proposed districts. It thus appears that the the authority to change boundaries upon petition applies only to reorganized school districts and that the change of boundaries of school districts is not an exclusive function of the county board.

The record fails to disclose any breach of a statutory duty on the part of the defendants. The electors of the district had authority to approve the issuance of bonds and the creation of an indebtedness upon the district for the purpose of erecting a school building and it is the duty of the district officials to carry out the mandate of the voters.

Undoubtedly equity will enjoin a school board in a properly constituted action from selling and issuing bonds in a manner not authorized by statute, but this is not such a case. Plaintiffs seek the aid of equity to restrain the issuance of the bonds until their petition for withdrawal of that part of the district outside the limits of the City of Bridgewater is acted upon. An irrepealable tax sufficient for the payment of the principal and interest of the bonds will be levied at or before their issuance, and plaintiffs assert that withdrawal of the territory thereafter would not afford relief from such tax burden. Plaintiffs seek to preserve the status quo of the bond proceedings so that they may first have a determination of their petition to withdraw the territory in question from the district.

The granting of injunctional relief rests in the sound discretion of the court exercised in harmony with well settled principles. Parsons v. City of Sioux Falls, 65 S.D. 145, 272 N.W. 288; Losee v. Hettich, 74 S.D. 461, 54 N.W.2d 353. It is the duty of the court to consider its effect upon all parties in interest and to issue only in case it is necessary to protect a substantial right. State ex rel. Cranmer v. Thorson, 9 S.D. 149, 68 N.W. 202, 33 L.R.A. 582; Alsager v. Peterson, 31 S.D. 452, 141 N.W. 391. An injunction will not issue to protect a right which may never arise. 43 C.J.S., Injunctions, § 19. The right to an injunction must, in other words, be established with reasonable certainty. Alsager v. Peterson, supra. The objectives of the legislation for reorganization of school districts are rather clearly revealed when read in its entirety and considered. The legislature had in mind the establishment of larger school districts and thus ostensibly to provide more uniformity in educational opportunities and facilities and to equalize the tax burden. Having in mind the purposes that are intended to be accomplished by the 1955 Act, we cannot say that there is reasonable probability that a school district embracing the same territory as the City of Bridgewater will meet the requirements and limitations for reorganization.

Counsel for plaintiffs rely upon Town of North Carrollton v. Town of Carrollton, 113 Miss. 1, 73 So. 812, in support of their contention that the facts in the instant case

present a cause of equitable cognizance. The case before us is distinguishable from the cited case in that it involved a mandatory statute. The court, as appears from a case involving the same parties, Town of Carrollton v. Town of North Carrollton, 109 Miss. 494, 69 So. 179, construed the governing statute as follows: "It was obviously, therefore, the purpose of the Legislature by chapter 129, Laws of 1912, to provide a full, adequate, and speedy method of procedure by which the freeholders of the territory outside of the corporate limits might be released whenever, by any circumstance, the majority felt disposed so to do. It was never the purpose of the Legislature, by this act in question, to vest a mere discretion in the board of aldermen, or to leave it within the power of the board of aldermen to hold the outlying territory for an indefinite period against the will of the freeholders involved." The right of withdrawal of a part of a school district was there clearly established.

We have examined the assignments relating to the admission of evidence and find no prejudicial error.

The judgment appealed from is affirmed.

All the Judges concur.