HOSEA KINGMAN & others, petitioners.

Suffolk.     March 15, 16, 1892. — May 9, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Metropolitan Sewerage Act — Award of Commissioners — Statute.*

Commissioners appointed under § 13 of the St. of 1889, c. 439, known as the Metropolitan Sewerage Act, made their award in which they determined the proportion in which the cities and towns concerned should pay money to the Commonwealth for five years to meet interest and sinking fund requirements. A city and a town appealed from the decree accepting the award, on the ground that the commissioners had no right to determine the proportionate cost of the two systems and the sum to be paid by each city and town as a certain proportion of the total, contending that the commissioners had to do only with the proportion of cities and towns in the system to which they belonged, and that the total to be paid on account of the system was a matter of yearly estimate by the Treasurer of the Commonwealth, under §§ 13 and 15 of the act. *Held,* that, while the act was obscure, the commissioners as a judicial board were the proper board to estimate both elements of the final proportion, that the word "proportion," as used in § 13 of the act, was broad enough to warrant this interpretation, and that there was nothing elsewhere in the act requiring a different one.

APPEAL from the final decree accepting the award of commissioners appointed on May 26, 1891, under the statute of 1889, c. 439, § 13.

The award stated that the St. of 1889, c. 439, provided for the construction, maintenance, and operation of two systems of trunk and intercepting sewers within the city of Boston and seventeen other cities and towns in the Charles and Mystic River valleys.

The first system, known as the North Metropolitan system, and having its outlet at Deer Island, included the East Boston

and Charlestown Districts of Boston, and thirteen other cities and towns.

The second system, known as the Charles River system, and having its outlet at Moon Island, took in the rest of Boston, with Brookline, Newton, Waltham, and Watertown.

Both systems were required by the act to " be in substantial accordance with the plans reported and recommended by the State Board of Health in its report to the Legislature of 1889."

The North Metropolitan system, which was to be almost entirely of new construction, was to be the property of the Commonwealth, and under its immediate control.

By far the larger and more costly part of the Charles River system was already built. The city of Boston, at a cost of about $4,250,000, had constructed for its own use a trunk sewer, with pumping works, etc., from the intersection of Huntington Avenue and Camden (now called Gainsborough) Street down to Moon Island; and had thus provided for the sewage of substantially its whole territory (not tributary to the other system), excepting the Brighton District and an area of some nine hundred acres adjacent to Brookline and the south bank of Charles River. The report of the State Board of Health recommended the extension of this trunk sewer from Camden Street up the Charles River valley to Waltham, and that arrangements be made with Boston to receive and discharge through this sewer the sewage which should be collected and brought to Camden Street by such extension.

Two courses were open under the act: first, the city of Boston might continue to own, maintain, and operate as heretofore the section below Camden Street, receiving and handling at the same time, for a compensation to be fixed by agreement or otherwise, the sewage delivered by the section above Camden Street; or, secondly, the Commonwealth might purchase or take from the city the section below Camden Street, and so hold, maintain, and operate the entire Charles River system as its own.

In the first case, the cost (estimated at about $800,000) of the upper section only, and the expense (including the compensation paid the city as above) of maintaining and operating that section only, would require to be provided for and apportioned under the act; and in that case it was obvious that only that

part of Boston which was tributary to the upper section should be made to contribute with the other cities and towns to such cost and expense. In the second case, the cost (probably exceeding $5,000,000), as well as the very largely increased expense of maintenance and operation of the entire system from Waltham to Moon Island, would require to be provided for and apportioned under the act; and in this case it was equally clear that all that portion of Boston which was tributary to the entire system should contribute to the cost and expense.

The commissioners stated that they made their award on the assumption " that for the present, and probably during the whole term of five years covered by this award, the section below Camden Street will continue to be owned, maintained, and operated by the city of Boston, but under an arrangement to receive, pump, and discharge at Moon Island, for an agreed compensation, the sewage from the section above Camden Street. . . . The moneys which the several cities and towns are required to pay annually into the treasury of the Commonwealth are for two distinct purposes: first, to meet the interest and sinking fund requirements of the Metropolitan Sewerage Loan, which the act authorizes to be issued, to the amount of $5,000,000, for defraying in the first instance the cost of constructing the two systems; and, second, to meet the annual cost of the maintenance and operation of the systems after they are completed. The amounts of money which may be necessary from year to year for each of these purposes are to be ascertained in the manner prescribed in the act. We have only to determine the proportions in which the respective amounts, when so ascertained, shall be paid in by the several cities and towns."

The report further recited:

" The act provides but one loan for the construction of both systems, and one sinking fund for its redemption at maturity. It is necessary, therefore, to determine in the first place the proportion in which each system as a whole should contribute to the interest and sinking fund requirements of the entire loan. Each system should evidently contribute in the ratio of its cost. This cannot be exactly known until the construction has been completed, but it can be estimated with substantial accuracy. The detailed estimates of the cost of each system, contained in

the report of the State Board of Health before referred to, have been carefully revised at our request by the Board of Metropolitan Sewerage Commissioners, who have already made considerable progress in the execution of the work. As nearly as can now be ascertained, we find that the cost of constructing the North Metropolitan system will be eighty-five per cent, and that of the Charles River system fifteen per cent, of the whole cost of constructing both systems; and, as between the two systems, we determine these to be the proportions in which they should respectively contribute to the interest and sinking fund requirements of the whole loan.

" We next determine, upon the basis before outlined, the proportion or percentage which each of the cities and towns in the North Metropolitan system should pay of the eighty-five per cent, and each of the cities and towns in the Charles River system of the fifteen per cent, apportioned as above to said systems, respectively; and by combining the two percentages we obtain the proportions in which the several cities and towns in both systems should contribute to the interest and sinking fund requirements of the whole loan. The percentages for each system, and the resulting proportions for both systems, are tabulated below.

" We determine and award that the several cities and towns named in said act shall annually pay money into the treasury of the Commonwealth, for the term of five years next following the year of the first issue of the scrip or certificates of debt therein named, to meet the interest and sinking fund requirements for each of said years, as estimated by the Treasurer of the Commonwealth, and any deficiency in the amount previously paid in, as found by said Treasurer, in the proportions set against the names of said cities and towns, respectively, in the right-hand column of the following table " (all being here omitted except the town of Brookline and the city of Newton) : —

| City or Town. | System. | Percentages. Each System. | Proportions. Both Systems. |
| --- | --- | --- | --- |
| Brookline, | Charles River, | 34.32 of 15.00 | 5.15 |
| Newton, | "    " | 26.82    " | 4.02 |

The award further stated, that the annual cost of the maintenance and operation of each system was required by the act to

be estimated by the Board of Metropolitan Sewerage Commissioners and certified to the Treasurer of the Commonwealth; that this had been done for each of the five years covered by the award; that it appeared by the estimate for the North Metropolitan system that the progress of the work was expected to be such that a half of the towns would have the use of the sewer twelve months earlier than the other half; that this required a slight difference of apportionment; that in other respects the cost of maintenance and operation for both systems had been apportioned on the basis already indicated; and " that the several cities and towns named in said act, and belonging to each of said systems, shall annually pay money into the treasury of the Commonwealth for the aforesaid term of five years, to meet the cost of maintenance and operation of said systems, respectively, for each of said years, as estimated by the said board and certified to said Treasurer, and any deficiency in the amount previously paid in, as found by said Treasurer, in the proportions set against the names of said cities and towns, respectively, in the following table " (all being here omitted except the town of Brookline and the city of Newton) : —

| City or Town. | Charles River System. Proportions. |
|---|---|
| Brookline . . . . . . . . . . | 14.16 |
| Newton . . . . . . . . . . | 29.35 |

The town of Brookline and the city of Newton moved for a revision of the award, in that it required them to contribute a share of the loan and to pay a proportion of the expense of the North Metropolitan system, contrary to the provisions of the act, and was therefore in excess of the authority given the commissioners thereunder.

The award was accepted by a decree of the Supreme Judicial Court, dated January 26, 1892, and the town of Brookline and the city of Newton appealed to this court.

*C. A. Williams*, for the town of Brookline.

*W. S. Slocum*, for the city of Newton.

*A. E. Pillsbury*, Attorney General, for the Commonwealth.

*W. D. Turner*, for the petitioners.

HOLMES, J. Since the decision in 153 Mass. 566, the commissioners therein referred to have been appointed, and have

made their award, determining the proportion in which the cities and towns concerned shall pay money to the Commonwealth for five years, to meet interest and sinking fund requirements under the Metropolitan Sewerage Loan. This award has been accepted by a single justice of this court. St. 1889, c. 439, § 13. The town of Brookline and the city of Newton appeal: all other parties acquiesce. The ground of appeal is that the commissioners, besides determining the proportion in which each city and town shall pay in the drainage system to which it belongs, have undertaken also to determine the proportionate cost of the two systems, and to determine the sum to be paid by each city and town as a certain proportion of the total. The percentage of the North Metropolitan system is estimated at 85; that of the Charles River system at 15. Brookline is estimated at 34.32 of the latter, and then again is estimated at 5.15 of the whole. Newton, in like manner, is put at 26.82 and 4.02. It is said that, as the proportionate cost of the two systems was matter of estimate when the award was made, and as the award stands for five years, it may turn out before that time has elapsed that the Charles River system has been charged too large a proportion, and thus that the appellants, by being made to pay a fraction of the whole determined by the charge to the Charles River system, will have to pay part of the cost of the other system. It is suggested that the commissioners have to do only with the proportion of cities and towns in the system to which they belong, and that the total to be paid on account of the systems is a matter of yearly estimate by the Treasurer of the Commonwealth, under §§ 13 and 15.

It is said, and we agree, that the statute shows a purpose to keep the two systems distinct. On the other hand, the statute contemplates but a single loan by which the Commonwealth is to raise the money for its advances on account of both systems. More advantageous terms could be obtained in that way, and but a single loan has been made in fact. The cities and towns of the two systems are required to pay for a sinking fund, one eightieth part of the whole amount in each of the first ten years. In some way, the proportion of this one eightieth to be paid by each system must be estimated. If the two systems were complete and the cost of each fixed, the proportion would

be found by a very simple calculation, and it would not matter whether the proportion to be paid by each city and town were expressed as a proportion of the whole or not. But the work is not finished, and therefore estimates must be resorted to. For it is plain that the proportion of one eightieth of the whole loan to be repaid by each system this year, like the proportion of the whole loan to be repaid by each system ultimately, must have reference to the total cost of the two, and not to the accidental expenditures for the particular year.

The statute is unfortunately obscure as to who shall make the estimate of which we speak. Perhaps it would be possible to reconcile the words used with either view. But, manifestly, it is more desirable and more consistent with the spirit of the act, that the commissioners rather than the treasurer should do it. The commissioners are a judicial board who decide what is intrusted to them after·notice and hearing. By § 13 the commissioners shall " determine for each system the proportion in which each of the cities and towns . . . shall annually pay money into the treasury of the Commonwealth for the term of five years, . . . to meet the interest and sinking fund requirements for each of said years as estimated by said treasurer." This proportion is a proportion of the entire loan, as we have said, and therefore the proportion which indisputably is to be determined by the commissioners depends upon the proportion between the systems. We are of opinion that the commissioners are the proper board to estimate both elements of the final proportion, that the word " proportion " in the sentence just quoted is broad enough to warrant this interpretation, and that there is nothing elsewhere in the act requiring a different one.

The only differences between the appellants' view and that which we take are in the persons who make the necessary estimate, and the length of time for which it governs the annual payments, — five years instead of one. These differences raise no constitutional question. Moreover, it is to be presumed that the work will be finished, and the actual cost ascertained, long before the sinking fund is paid in. If any rectification is necessary in respect of past payments, we see no greater difficulty in its being made by the commissioners than by the treasurer.

*Decree affirmed.*