(July 28, 1921.)

In re Segregation of SCHOOL DISTRICT No. 58 from RURAL HIGH SCHOOL DISTRICT No. 1. RURAL HIGH SCHOOL DISTRICT No. 1 and MAT FUHS, Appellants, v. SCHOOL DISTRICT No. 58, C. C. MILES et al., as Petitioners, and R. N. WRIGHT, as Clerk of the Board of County Commissioners of Nez Perce County, State of Idaho, and BOARD OF COUNTY COMMISSIONERS OF NEZ PERCE COUNTY, Respondents.

[200 Pac. 138.]

RURAL HIGH SCHOOL DISTRICT — SEGREGATION OF SCHOOL DISTRICT — PETITION—SUFFICIENCY—STATUTORY CONSTRUCTION—AMENDMENT— LITERAL CONSTRUCTION—INTENT—IMPAIRMENT OF CONTRACT.

1. A petition filed with the board of county commissioners, for the segregation of a school district from a rural high school, need

not be drawn with the formal accuracy required of a pleading in a judicial proceeding.

2. The failure of such petition to state jurisdictional facts is not fatal, if such facts appear in the record of the hearing.

3. The obvious intention of a legislature in passing a statute ought to prevail as against its literal construction if the words used can be given a construction which will effectuate that intention.

4. The usual meaning of a word may be disregarded when it is evident that it was incorrectly used, or that the legislature used it in another sense.

5. The segregation of a school district from a rural high school district does not impair the obligation of a contract between the latter and one of the included districts, in regard to the erection and maintenance of a school.

APPEAL from the Tenth Judicial District, for the County of Nez Perce. Hon. Wallace N. Scales, Judge.

Judgment of District Court affirming order of County Commissioners segregating school district from rural high school district. *Affirmed.*

Fred E. Butler, for Appellants.

A board of county commissioners is a tribunal with limited jurisdiction and only *quasi*-judicial powers, and therefore jurisdiction is not presumed, but must affirmatively appear. (*Gorman v. Board of County Commrs.*, 1 Ida. 553; *City of Ottawa v. Carey*, 108 U. S. 110, 2 Sup. Ct. 361, 27 L. ed. 669.)

The enactment permitting the segregation of a school district from a rural high school district violates that provision of sec. 10 of art. 1 of the federal constitution, providing that: "No state shall . . . . pass any . . . . law impairing the obligations of contracts." (*Love v. Cavett*, 26 Okl. 179, 109 Pac. 553; *People v. Hand*, 135 N. Y. Supp. 192.)

Publisher's Note.

3. Interpretation of statute so as not to recognize *casus omissus*, see notes in Ann. Cas. 1913D, 711; 3 A. L. R. 404.

It was necessary for the board to agree before they were authorized to make the order of segregation. (*Sudler v. Lankford*, 82 Md. 142, 33 Atl. 455.)

A legislative act may constitute a contract between the state and a corporation which has derived rights under it and is subject to the contract clause of the federal constitution. (*American Telephone & Tel. Co. v. New Decatur*, 176 Fed. 133.)

Eugene O'Neill and Lawrence E. O'Neill, for Respondent.

Jurisdiction to release portions of school district does not depend on recital in petition of jurisdictional facts, as to signing by majority of resident freeholders, but upon fact of petition being so signed. (*Farrell v. Sibley County*, 135 Minn. 439, 161 N. W. 152.)

The argument that the districts cannot be segregated because the law permitting it is a violation of the constitution of the United States prohibiting the passage of any state law violating the obligation of contracts, has no application to this case. (9 Cyc. 241; *Pierce Oil Corporation v. City of Hope*, 248 U. S. 498, 39 Sup. Ct. 172, 63 L. ed. 381; *Boston Beer Co. v. Massachusetts*, 97 U. S. 25, 24 L. ed. 989; *Texas & N. O. R. Co. v. Miller*, 221 U. S. 408, 31 Sup. Ct. 534, 55 L. ed. 789.)

The only jurisdictional fact required is the showing that it is for the best interests of the petitioning school district to be segregated. (*Town of North Carrollton v. Town of Carrollton*, 113 Miss. 1, 73 So. 812.)

McCARTHY, J.—A petition was filed with the board of county commissioners of Nez Perce county pursuant to chapter 122 of the Session Laws of 1915, now C. S. 866, asking for the segregation of School District No. 58 from Rural High School District No. 1. The board made the following order as shown in its minutes:

"43800.   The Board now considers the Petition of C. C. Miles, et al., of School District No. 58 for segregation of said School District from Rural High School No. 1.   It appearing to the Board that the petition contains the required two-thirds of the heads of families and residents of School District No. 58, the matter is carefully considered, and it is the judgment of this Board, Watson and Southwick voting Aye, Ferris voting No, that such segregation is to the best interests of School District No. 58, and the petition for such segregation is hereby granted.

"44209 . . . .

"44260. . . .

"It is hereby ordered that School Districts Nos. 37, 58, 46 are hereby Ordered Segregated from Rural High School District No. 1.   At this time the Board adjourns to meet July 29th, at 9 A. M.

"Attest, R. N. WRIGHT,

"Clerk.

"Chairman, GEO. S. WATSON.

"By FRED H. WOOD,

"Deputy.

"Duly certified.

"Filed, Aug. 21, 1916."

Appeal was taken to the district court of the tenth district for Nez Perce county.   After trial that court found that the petition was signed by more than two-thirds of the heads of families and residents of the districts and otherwise complied with the statute, that it was to the best interest of School District No. 58 to be segregated from Rural High School District No. 1, and that the segregation asked for would still leave three school districts in the Rural High School District.   It affirmed the order of segregation made by the board.   From that judgment appeal is taken to this court.   The statute in question reads as follows:

"Sec. 866.   Whenever two-thirds of those who are heads of families and residents of any regularly organized school

district joined to a rural high school district, shall present a petition to the board of county commissioners showing that it is to the best interests of the said regularly organized school district to be segregated from the rural high school, to which said regularly organized district is joined, it shall be lawful for the said board, if they agree, and if by so doing there will be left at least two regularly organized school districts in said rural high school district to segregate said petitioning subdistrict from said rural high school district. Any regularly organized school district so segregated shall forfeit its rights to any portion of the moneys on hand, and to any claims upon the property of said rural high school district; *Provided,* That the aforesaid petition shall be filed in the office of the county superintendent 15 days prior to the quarterly meeting of the county commissioners." (C. S., sec. 866.)

Appellant's first point is that the petition was insufficient to give the board of commissioners, or the district court, jurisdiction, in that it does not appear upon its face that it is signed by the requisite number, or that the segregation is for the best interests of the district. The petition need not be drawn with the formal accuracy required of a pleading. In such proceedings jurisdiction does not depend upon the recital of jurisdictional facts in the petition, such as the signing of the requisite number; it is sufficient if such jurisdictional facts be proved on the hearing, as shown by the record. (*State v. Catlin,* 33 Ida. 437, 195 Pac. 628; *North Carrollton v. Carrollton,* 113 Miss. 1, 73 So. 812; *Sorknes v. Board of County Commrs.,* 131 Minn. 79, 154 N. W. 669; *School Dist. v. Thompson,* 27 N. D. 459, 146 N. W. 727; *State v. Peterson,* 55 Mont. 355, 177 Pac. 245.) On the trial in the district court evidence that the petition was signed by the requisite number was uncontradicted. Evidence that the segregation was for the best interests of School District No. 58 was introduced as was also evidence to the contrary. The evidence

being conflicting, the finding of the trial court will not be disturbed.

The second point is that the commissioners did not unanimously agree. The statute was originally passed in 1911, Sess. Laws 1911, chap. 159, sec. 141. The portion in point read as follows: " . . . . it shall be lawful for the said board, if they unanimously agree, to segregate said petitioning sub-district from said rural high school district."

It did not provide that more than one school district must be left in the rural high school district. This was amended by chapter 122 of the Session Laws of 1915, now C. S., sec. 866, *supra*. The following changes were made. The word "unanimously" was stricken. The words, "and if by so doing there will be left at least two regularly organized school districts in said rural high school district," were inserted, as were also the words, "Any regularly organized school district so segregated shall forfeit its rights to any portion of the moneys on hand and to any claims upon the property of said rural high school district." The bill which was first introduced in the session of 1915, for the purpose of amending the law of 1911, contained the word "unanimously." Upon recommendation of the Committee of the Whole House, the House of Representatives amended it by striking out the word "unanimously." With that word omitted, the bill was enacted into law. (Journal of House of Representatives for 1915, p. 393.) This court takes judicial notice of the journals of the House and Senate. (*Peavy v. McCombs*, 26 Ida. 143, 140 Pac. 965.) The word "agree" is defined as follows: "To admit, or come to one mind concerning; to bring one's self into agreement with, to cause one's self to accede or consent to; to harmonize in opinion, statement, or action; to be in unison or accord." (Webster's New International Dictionary.)

The point urged is that the words, "it shall be lawful for the said board if they agree," necessarily connote

unanimous action. The decision of this point involves consideration of certain fundamental principles of statutory construction. Nontechnical words and phrases are construed according to the context and the approved use of the language. (C. S., sec. 9455.)

"The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (Lewis' Sutherland on Statutory Construction, 2d ed., vol. 2, sec. 376; *People v. Craycroft,* 111 Cal. 544, 44 Pac. 463; *State v. King,* 44 Mo. 283; *Cearfoss v. State,* 42 Md. 403; *Taylor v. McGill,* 6 Lea (Tenn.), 294. *In re Penobscot Assn.,* 93 Me. 391, 45 Atl. 290; *Adams v. Sleeper,* 64 Vt. 544, 24 Atl. 990; *Kingman v. Commissioners,* 156 Mass. 361, 30 N. E. 820; *Bishop v. Barton,* 2 Hun (N. Y.), 436.)

However, the intent must be expressed by the words used and "a legislative intention not expressed in some appropriate manner has no legal existence." (Lewis' Sutherland on Statutory Construction, 2d ed., vol. 2, sec. 388; *Lee Bros. v. Cram,* 63 Conn. 433, 28 Atl. 540; *United States v. Chase,* 135 U. S. 255, 10 Sup. Ct. 756, 34 L. ed. 117; *Brotherhood Acc. Co. v. Lineham,* 71 N. H. 7, 51 Atl. 266; *County Board v. State,* 148 Ind. 675, 48 N. E. 226.) "Effect must be given, if possible, to every word, clause and sentence of a statute." (*State v. Bartley,* 39 Neb. 353, 58 N. W. 172, 23 L. R. A. 67; Lewis' Sutherland on Stat. Const., 2d ed., vol. 2, sec. 380.) An intentional omission of words by a legislature should be given effect. (Id., sec. 368; *Yarbrough v. Collins,* 91 Tex. 306, 42 S. W. 1052.) Where changes have been introduced by amendment it is not to be assumed that they were without design; usually an intent to change the law is inferred. (*Springfield Co. v. Walton,* 95 Mo. App. 526, 69 S. W. 477; *Duff v. Karr,* 91 Mo. App. 16.) How-

ever, every change of phraseology does not indicate a change of substance and intent. The change may be made to express more clearly the same intent or improve the diction, or it may be the result of oversight or carelessness. A change of language has more significance where the purpose is to amend a single statute than in a general revision or codification. In the latter case changes in style are often made to gain conciseness and simplicity. (Lewis' Sutherland on Stat. Const., 2d ed., vol. 2, secs. 401, 402; *St. George v. Rockland*, 89 Me. 43, 35 Atl. 1033.) The usual meaning of a word may be disregarded when it is evident that it was incorrectly used or that the legislature used it in another sense. Where one word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied. (Lewis' Sutherland on Stat. Const., 2d ed., vol. 2, secs. 367, 410. *Haney v. State*, 34 Ark. 263; *Reynolds v. Holland*, 35 Ark. 56; *White v. Rio Grande Western Ry. Co.*, 25 Utah, 346, 71 Pac. 593; *Territory v. Clark*, 2 Okl. 82, 35 Pac. 882.) The fact that the word "unanimously" was stricken out by amendment in 1915, after the original bill was introduced, convinces us that the legislature meant thereby to change the meaning of the law. It is true that the word "agree" usually imports unanimity, and, under ordinary conditions, it would not be given any other meaning. However, we think the language used is sufficiently flexible to import the idea that it is sufficient if the board agrees as a board, in which case a majority vote would decide. Being convinced that this was the intent of the legislature, and that it is possible to place this construction upon the language used, we conclude that the action of the board in segregating the district by a two-to-one vote is valid.

The third point is that to permit the district to be segregated would be to impair the obligation of a contract between the Rural High School District and the Lapwai District No. 58, by which the latter agreed to build a

schoolhouse and the former to maintain an accredited high school in it. The act of segregation would not impair any existing contract, or deprive either of the parties to it of any remedy for its enforcement or breach.

The judgment is affirmed, with costs to respondent.

Rice, C. J., and Budge, Dunn and Lee, JJ., concur.