(December 31, 1923.)

## STATE, Respondent, v. D. E. ARMSTRONG, Appellant.

[225 Pac. 491.]

CHIROPODY — MEDICINE AND SURGERY — STATUTORY CONSTRUCTION — OBVIOUS INTENT—INTENT EXPRESSED—RIGHT TO FOLLOW CALLING—PROHIBITORY LEGISLATION—PROTECTION OF PUBLIC HEALTH—REGULATORY LEGISLATION—REASONABLENESS OF.

1. The practice of chiropody is not the practice of medicine and surgery.

2. The intent of the legislature must be gathered from the language used, but the obvious intent should prevail as against a literal construction if the language is sufficiently flexible to permit it.

3. The provisions of chapter 60, Sess. Laws 1923, apply to the practice of chiropody.

4. The right to follow a recognized and useful occupation is protected by the constitutional guarantee of liberty.

5. A calling may not be prohibited by the legislature unless it is inherently injurious to the public health, safety or morals, or has a tendency in that direction.

6. The legislature cannot prohibit the practice of chiropody.

7. The legislature has power to regulate all callings related to the public health.

8. The legislature has power to regulate chiropody.

9. The regulation of a calling by the legislature must be reasonable and bear some relation to the object sought.

10. To require a chiropodist to obtain the education and license of a physician and surgeon, an osteopath, or a chiropractor, is not a reasonable regulation.

11. So far as it affects chiropody, chapter 60, Sess. Laws 1923, is void and inoperative.

12. So far as it affects the branches of the healing art licensed by the statutes, and all callings or practices sufficiently related to fall within them, chapter 60, Sess. Laws 1923, is valid.

13. The intent of sec. 2 of chapter 60, Sess. Laws 1923, is to prohibit the use of the word "doctor" and other words and abbreviations mentioned in such way as to falsely indicate that one is a licensed practitioner of one of the learned branches of the healing art.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Prosecution for diagnosing, operating and prescribing for a disease, injury and deformity, for compensation, and for advertising by the use of the word "doctor," without having a valid, unrevoked license. Judgment of conviction. *Reversed and remanded for new trial.*

J. R. Smead, for Appellant.

It has not been the policy of our law-making body to undertake to prohibit, either directly or indirectly, the following of any legitimate occupation within the state of Idaho. (*State v. Fite,* 29 Ida. 464, 159 Pac. 1183.)

The intent must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. (*Empire Copper Co. v. Henderson,* 15 Ida. 635, 99 Pac. 127.)

A statute should be construed in the light of the purpose of the legislature in enacting the same. (*Colburn v. Wilson,* 24 Ida. 94, 132 Pac. 579.)

That which is not within the intent of a statute is not within the statute. (2 Lewis' Sutherland on Stat. Const., sec. 379.) A literal import of a statute does not govern as against its evident intention. (*Idem,* secs. 370–376.)

"A chiropodist is neither a physician nor a surgeon." (*State v. Fisher,* 119 Mo. 344, 24 S. W. 167, 22 L. R. A. 799.)

Laws are enacted to be read and obeyed by the people at large and words in common use among the people should be given the same meaning in the laws as they have among the people who are expected to read them. (*Adams v. Lansdon,* 18 Ida. 483, 110 Pac. 280.)

Appellant's right to practice is a valuable property right. (*Ex parte Wall,* 107 U. S. 265, 2 Sup. Ct. 569, 27 L. ed. 552.)

The right of liberty includes the right to choose one's own occupation and follow it in one's own way. (*Meyer v. Nebraska,* 262 U. S. 390, 43 Sup. Ct. 625, 67 L. ed. 1042.)

It is the natural and constitutional right of every person to engage in any lawful business he may choose, subject only to reasonable regulation. (*Moffit v. City of Pueblo,* 55 Colo. 112, 133 Pac. 754; *Hewitt v. Board of Med. Examiners,* 148 Cal. 590, 113 Am. St. 315, 7 Ann. Cas. 750, 84 Pac. 39, 3 L. R. A., N. S., 896; *Chenoweth v. Board of Med. Examiners,* 57 Colo. 74, Ann. Cas. 1915D, 1188, 141 Pac. 132, 51 L. R. A., N. S., 958.)

The power to regulate does not entail the power to prohibit. (12 C. J. 931; *People v. Weiner,* 271 Ill. 74, Ann. Cas. 1917C, 1065, 110 N. E. 870, L. R. A. 1916C, 775; *Ex parte Whitwell,* 98 Cal. 73, 35 Am. St. 152, 32 Pac. 870, 19 L. R. A. 727; Tiedeman, Police Power, secs. 3, 85, 194; *Re Jacobs,* 98 N. Y. 98, 50 Am. Rep. 636; *People v. Gilson,* 109 N. Y. 389, 4 Am. St. 465, 17 N. E. 343; Cooley, Const. Lim., 6th ed., pp. 606, 607, 744; *Ruhstrat v. People,* 185 Ill. 133, 76 Am. St. 30, 57 N. E. 41; *Ritchie v. People,* 155 Ill. 98, 46 Am. St. 315, 40 N. E.

454, 29 L. R. A. 79; *State v. Towessnute,* 89 Wash. 478, 154 Pac. 805; *Bonnett v. Vallier,* 136 Wis. 193, 128 Am. St. 1061, 116 N. W. 885, 17 L. R. A., N. S., 486; *People v. Erickson,* 147 N. Y. Supp. 226.)

Hawley & Hawley, *Amici Curiae.*

Session Laws of 1923, chap. 60, was not intended to include practitioners of chiropody. (10 C. J. 757; *State v. Smith,* 25 Ida. 541, 138 Pac. 1107; *Ex parte McNulty,* 77 Cal. 164, 11 Am. Rep. 257, 19 Pac. 237; *Robinson v. People,* 23 Colo. 123, 46 Pac. 676; *Hewitt v. Board of Medical Examiners,* 148 Cal. 590, 113 Am. St. 317, 7 Ann. Cas. 750, 84 Pac. 39, 3 L. R. A., N. S., 896; *United States v. Kirby,* 7 Wall. (U. S.) 482, 19 L. ed. 279; *Wood v. Independent School Dist. No. 2,* 21 Ida. 734, 124 Pac. 780; *Oregon etc. R. R. Co. v. Minidoka etc. Dist.,* 28 Ida. 214, 153 Pac. 424; *Howerton v. District of Columbia,* 289 Fed. 628; *State v. Prather,* 79 Kan. 513, 100 Pac. 57, 21 L. R. A., N. S., 23; *Melville v. State,* 173 Ind. 352, 89 N. E. 490; *Abrams v. Jones,* 35 Ida. 532, 207 Pac. 724.)

If chapter 60, 1923 Sess. Laws, can be construed to prohibit chiropodists from practicing, then the act is unconstitutional. (*Abrams v. Jones, supra; Hewett v. State Bd. of Med. Examiners, supra; Ex parte Wall,* 107 U. S. 265, 2 Sup. Ct. 569, 27 L. ed. 552; Constitution of Idaho, sec. 13, art. 1; *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205; *Boyd v. United States,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. ed. 746.)

Barber & Barber, *Amici Curiae.*

The citizen cannot be prohibited the exercise of his right to follow a lawful employment, except the restriction be exercised in behalf of public health, public morals or public safety; and then the burden is on the state to prove the existence of one of these conditions of exception before it may be permitted to exercise this restraint. (*State ex rel. Kempinger v. Whyte,* 177 Wis. 541, 23 A. L. R. 67, 188 N. W. 607; *Hyatt v. Blackwell Lumber Co.,* 31 Ida. 452, 173 Pac. 1083;

*Crom v. Frahm,* 33 Ida. 314, 193 Pac. 1013; *In re Aubrey,* 36 Wash. 308, 104 Am. St. 952, 1 Ann. Cas. 927, 78 Pac. 900.)

A. H. Conner, Atty. General, and Jas. L. Boone, Assistant, for Respondent.

Under the stipulated facts in this case the appellant is engaged in the practice of medicine and surgery. (C. S., sec. 2112; *State v. Fite,* 29 Ida. 463, 159 Pac. 1183; *State v. Sawyer,* 36 Ida. 814, 24 Pac. 222; *State v. Herring,* 70 N. J. L. 34, 1 Ann. Cas. 51, 56 Atl. 670; *State v. Liffring,* 61 Ohio, 39, 76 Am. St. 358, 55 N. E. 168, 46 L. R. A. 334; *Hayden v. State,* 81 Miss. 291, 95 Am. St. 471, 33 So. 653; *State v. Gallagher,* 101 Ark. 593, 143 S. W. 98, 38 L. R. A., N. S., 328; *State v. Lawson* (Del.), 65 Atl. 593; *State v. Smith,* 233 Mo. 242, 135 S. W. 465, 33 L. R. A., N. S., 179.)

Considering chiropody is not included in the definition of medicine and surgery, it is the intent of the legislature to include the practice of chiropody within the scope of the act. (Sec. 3, chap. 60, Laws of 1923.)

It is the intent of the legislature to include those skilled in electrolysis and who hold themselves out to the public as giving electrical treatments within the scope of chapter 60, Laws of 1923. (Sec. 3, chap. 60, Laws of 1923.)

A statute is passed as a whole, consequently each section should be construed in connection with every other part or section so as to produce a harmonious whole. (2 Lewis' Sutherland on Statutory Construction, p. 706.)

The act in question is a valid exercise of the police power of the state. (*State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259; *In re Gemmill,* 20 Ida. 732, Ann. Cas. 1913A, 76, 119 Pac. 298, 41 L. R. A., N. S., 711; *Pike v. State Board of Land Commrs.,* 19 Ida. 268, Ann. Cas. 1912B, 1344, 113 Pac. 447; *In re Inman,* 8 Ida. 398, 69 Pac. 120; *Barton v. Schmershall,* 21 Ida. 562, 122 Pac. 385; *State v. Smith,* 233 Mo. 242, 135 S. W. 465, 33 L. R. A., N. S., 179; *State v. Johnson,* 84 Kan. 411, 114 Pac. 390, 41 L. R. A., N. S., 539; *State v. Bragg,* 134 Ala. 165, 32 So. 767.)

McCARTHY, J.—Appellant was accused by an information of the crime of knowingly, wilfully and unlawfully operating for and prescribing for a disease, injury and deformity of a certain person for a fee; the charging part of the information being as follows: That the said D. E. Armstrong on or about the 11th day of May, 1923, in the county of Ada, state of Idaho, did then and there knowingly, wilfully and unlawfully diagnose, operate for and prescribe for a disease, injury and deformity of a certain person, to wit, J. R. O'Donnell, for a certain fee and compensation, to wit, $5; the said D. E. Armstrong, then and there advertising in the daily newspapers published in Boise, Ada county, Idaho, and by printed letters on her door, by using the word "doctor" and the prefix "Dr."; the said D. E. Armstrong then and there having no valid unrevoked license granted by the state of Idaho to perform such services. A trial by jury was waived and the case submitted on an agreed statement which set forth the following facts. Appellant had on the entrance door of her office the printed letters, "Dr. Armstrong, Chiropodist," and caused to be inserted in two newspapers at Boise printed matter describing her by the prefix "Dr." and stating that she was engaged in the practice of chiropody and electrolysis. On May 11th she practiced chiropody, removed two corns or calluses by a cutting operation performed with an instrument known as a scalpel, diagnosed for one J. R. O'Donnell an ailment of the foot known as a "Morton toe," and treated it by binding and strapping the foot. In each instance she received pay. She is a well-qualified chiropodist and graduate of the Chicago School of Chiropody and has practiced in Boise since 1918. She is a well qualified to diagnose, treat and prescribe for ailments and diseases of the foot included in the scope of chiropody as it is recognized in medical science and by the laws of many states other than Idaho. She is well educated and qualified to give treatments by electrolysis. She has been ready and willing to procure a license to practice chiropody but has been unable to procure one because the statutes of Idaho

do not provide for it. From a judgment of guilty of the offense charged this appeal is taken. The many assignments of error may be summed up as follows: The judgment is contrary to the evidence and the law in that (1) the evidence fails to show that appellant was engaged in any occupation for which the laws of the state of Idaho require a license, (2) the effect of the judgment is to deprive appellant of liberty and property without due process of law.

The statute upon which the information is based reads as follows:

"Sec. 1. It shall be unlawful for any person, or persons, to practice or attempt to practice, or to advertise, or hold himself or themselves out as practicing, any system or mode of treating the sick or afflicted, either man or beast, in this state, or to diagnose, treat, operate for, prescribe for, any disease, injury, deformity, or other mental or physical condition of any person, or animal, for a fee or compensation of any kind either directly or indirectly, without having at the time of so doing a valid unrevoked certificate or license issued by the state of Idaho to perform or prescribe such service.

"Sec. 2. It shall be unlawful for any person or persons to hold himself or themselves out as practicing any system or mode of treating the sick, or the afflicted, man or beast, or in any sign, or in any advertisement use the words 'doctor,' or 'professor,' or the letters or prefix 'Dr.' or 'Prof.' or any other term or letters indicating or implying that he is a doctor, physician and surgeon, or practitioner, without having at the time of so doing a valid unrevoked certificate or license granted by the state of Idaho to perform or prescribe such service." (Chap. 60, Sess. Laws 1923, p. 68.)

Respondent contends that the chiropodist practices medicine and surgery. With this we cannot agree. Chiropody has long been recognized as an independent calling. The chiropodist is one who treats diseases or malformations of the hands and feet, especially a surgeon for the feet, hands and nails; a cutter or extractor of corns and callosities.

(Century Dictionary; Webster's New International Dictionary; Standard Dictionary.) Chiropody has been practiced as a recognized occupation since early in the 18th century. (Nelson's Encyclopedia.) It is a well-known fact of which the court will take judicial notice that physicians and surgeons do not, and will not, do the ordinary work of the chiropodist. Under a reasonable interpretation chiropody does not involve the practice of medicine or of surgery, either major or minor.

Until 1923 the legislature of the state of Idaho had divided the practice of the healing art into the several divisions generally recognized, such as medicine and surgery, osteopathy and chiropractic, requiring those practicing each branch of the art to undergo an appropriate examination and procure a license. It is clear that the purpose of these statutes was to protect the public health and conserve the public safety by requiring those practicing to be competent and qualified. The objects of such laws are, (1) to prevent people being mistreated by incompetents, and (2) to prevent the credulous from being misled and preyed upon. There can be no doubt that the purpose of these laws was to regulate and not prohibit. Appellant claims that the 1923 law should be given the same construction as the earlier laws. She invokes certain recognized canons of statutory construction which are approved by this court in *Re Segregation of School Dist. No. 58,* 34 Ida. 222, 200 Pac. 138.

"The obvious intention of the legislature in passing the statute ought to prevail as against its literal construction if the words used can be given a construction which will effectuate that intention."

"However, the intent must be expressed by the words used and a legislative intention not expressed in some appropriate manner has no legal existence." (*In re Segregation of School Dist. No. 58, supra.*)

While the general language used in sec. 1 of the act of 1923 includes medicine and surgery, those terms are not mentioned. Therefore there is no room for application of

the doctrines of *ejusdem generis* or *noscitur a sociis*. The statute provides it shall be unlawful for one to treat any physical condition of any person for a fee. A corn or callus or a Morton toe is certainly a physical condition, and appellant treated such conditions for a fee. There is no ambiguity in the language used in the act and therefore no room for construction. We are confined to the intent expressed by the words used, and the intent expressed covers the case before us. We surmise that the legislature did not have chiropodists in mind when it passed this act. However, our construction of the law must be based upon the language used and not upon surmise. The trouble arises from the fact that, as often happens, the legislature used general language without anticipating all the results which might follow. When the language used in a statute has a definite, clear meaning and applies to a certain case, the courts must give effect to that meaning whether or not the individuals comprising the legislature anticipated the result. We conclude that under the stipulation of facts appellant is guilty of an offense denounced by the statute.

Appellant's second point is that, if the statute makes the acts mentioned in the stipulation criminal, it is to that extent unconstitutional in that it deprives her of liberty and property without due process of law. The statutes do not provide an examination and license for chiropodists. The right to follow a recognized and useful occupation is a right protected by the constitutional guarantee of liberty. (Fourteenth Amendment to the Fed. Const.; Idaho Const., I, 13; *Meyer v. State*, 262 U. S. 390, 43 Sup. Ct. 625, 67 L. ed. 1042; *Chenoweth v. Board*, 57 Colo. 74, Ann. Cas. 1915D, 1188, 141 Pac. 132, 51 L. R. A., N. S., 958.) A calling may not be prohibited by the legislature unless (1) it is inherently injurious to the public health, safety or morals or (2) has a tendency in that direction. (*Mugler v. Kansas*, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205.) No facts are shown in this record and we know of none which would justify prohibiting chiropody. In fact, respondent disclaims any such intention on the part of the legislature.

Chiropody, however, bears some relation to the public health. There can be no question but that the legislature has power to regulate all callings that are related to the public health. (*State v. Smith,* 233 Mo. 242, 135 S. W. 465, 33 L. R. A., N. S., 179.) Respondent contends that the act does not prohibit chiropody, but regulates it by requiring that a chiropodist obtain one of the different sorts of licenses provided by the law such as that of a physician and surgeon, an osteopath, or a chiropractor. The regulation must be reasonable and must bear some relation to the object sought to be attained, which is to protect the public from being mistreated or misled by incompetent or unscrupulous practitioners. (*Meyer v. State, supra; Chenoweth v. Board, supra.*) To require a chiropodist to obtain the education and license of a physician and surgeon, an osteopath or a chiropractor, is not a reasonable regulation and is utterly unnecessary for the protection of the public. So far as it affects the practice of chiropody, the act is unconstitutional and void. Nothing we have said must be understood to mean that the act is void generally speaking. So far as it affects the branches of the healing art licensed by the statutes and all callings or practices sufficiently related to fall within them, it is valid.

While we hold that chiropody is a recognized occupation, independent of medicine and surgery, or any other branch of the healing art, a question arises whether all the acts committed by appellant fall within the scope of chiropody. We are satisfied that the removal of corns and calluses constitutes chiropody according to its generally accepted definition. We are not so sure about the treatment of Morton toe. The stipulation does not enlighten us as to the definition of that term. According to Gould's Medical Dictionary it is neuralgia of the fourth toe. Whether its treatment, and specifically the method resorted to, fall within the scope of chiropody or constitute the practice of medicine and surgery are questions which cannot be intelligently answered without further evidence.

In the charging part of the information it is substantially alleged that appellant violated sec. 2 of the act by using the word "doctor" in her advertisements. The stipulation shows that she advertised as "Dr. Armstrong, Chiropodist." Reading the entire section and giving it a reasonable construction, the evident intent is to prohibit the use of the word "doctor" in such a way as to indicate that a person is a licensed practitioner of one of the learned branches of the healing art. No such inference can be reasonably drawn when the qualifying word "chiropodist" appears in the same advertisement. No one could have been misled. The stipulated facts are not sufficient to establish a violation of sec. 2 of the act.

Something is said in the stipulation about the practice of electrolysis by appellant. This is immaterial as it is not covered by the charging part of the information. If it were material the evidence would have to be more definite both as to what electrolysis is and as to what appellant did. The term covers a wide variety of acts ranging from the removal of superfluous hair by electricity to the electrocution of a human being. We surmise that, as used in the stipulation, it refers to the removal of superfluous hair. A court cannot act upon surmise in a criminal prosecution.

The case must stand or fall on the specific charge in the information and the evidence in the stipulation responsive to it. The charge is that appellant treated Mr. O'Donnell, and the evidence shows she treated him for Morton toe by strapping and binding his foot. If that falls within the scope of chiropody she is not guilty. If it falls within the scope of medicine and surgery, she is. The stipulated facts do not make possible an intelligent answer to this question. The burden was on the state to establish her guilt beyond a reasonable doubt. This the evidence does not do.

The judgment is reversed and the cause remanded for a new trial in accordance with the views herein expressed.

Dunn and William A. Lee, JJ., concur.

### ON PETITION FOR REHEARING.

#### (May 6, 1924.)

McCARTHY, C. J.—In a petition for rehearing respondent urges that under the definition of chiropody given in the opinion chiropodists can practice orthopedic surgery or treat any diseases of the feet. We did not intend to give such an impression. In the first . part of the opinion we gave various definitions of chiropody found in the lexicons, some broader and some narrower in scope. We did not adopt any one of them as an absolutely correct legal definition. ' The stipulation of facts was of no value to us in this respect. We did not attempt a general comprehensive definition to cover all cases which might arise. We decided that certain of the acts committed by the appellant, to wit, removing corns and calluses, constituted the practice of chiropody within its generally accepted definition. This we regarded as so well established that the court should take judicial notice of it. As to the treatment of Morton's toe, another of the acts charged, we were not prepared to say that it fell within the scope of chiropody. On the other hand, we were not prepared to say, as a matter of judicial knowledge, that it constituted the practice of medicine and surgery. Further evidence was required to answer that question. We remanded the case for a new trial on that issue. It must therefore be apparent that nothing said in the opinion can be urged in defense of the position that a chiropodist can practice orthopedic surgery or treat all diseases of the feet or hands. We have said that the removal of corns and calluses constitutes the practice of chiropody and is not inhibited by the statute. To this may be added the treatment of the nails ordinarily practiced by chiropodists. We do not think it possible to go any further at present by way of laying down a general definition or rule. Definition is a difficult process, and with a definite state of facts in mind it is hazardous to attempt a definition to fit all possible states of fact. As Mr. Justice Holmes, of the supreme court of the United States, has said:

"A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." (*Towne v. Eisner*, 245 U. S. 418, 38 Sup. Ct. 159, 62 L. ed. 372.)

Much depends upon the facts of the individual case.

Respondent again urges that appellant violated the statute by using the word "doctor" in her advertisements. We conclude that the clause "indicating or implying that he is a doctor, physician and surgeon or practitioner" qualifies all that goes before. It is not the intent of the statute to make the use of the word "doctor" unlawful unless it is done in such a way as to imply that the person is a licensed practitioner of one of the learned branches of the healing art. This construction is borne out by the language used and is in line with the rule that the language of a statute creating a criminal offense should be strictly construed. With this explanation the petition for rehearing is denied.

Dunn and William A. Lee, JJ., concur.

WM. E. LEE, J., Concurring in Part and Dissenting in Part.—In view of what is said in the opinion on petition for rehearing, I concur in the opinion of the majority, except that part of the opinion which holds that appellant was not guilty of a violation of section 2 of the act by using the word "doctor" in her signs and advertisements.

By restating the section, the better to understand its meaning, section 2 makes it unlawful for any person who does not possess a valid, unrevoked certificate or license granted by the state to do all or any of the following: To hold himself out as practicing any system or mode of treating the sick or the afflicted, man or beast; to use, in any sign or advertisement, the words "doctor" or "professor," or the letters or prefixes "Dr." or "Prof."; or to use any other terms or letters indicating or implying that he is a doctor, physician and surgeon, or practitioner.

Section 2, as well as the entire act, relates to the healing art. In this connection, the word "doctor" and the prefix "Dr." have a well-understood meaning, and section 2, to my mind, plainly prohibits the use of either in any sign or advertisement. The legislature, evidently desirous of further strengthening the act, also prohibited the use of any other term or letters indicating that the one so using them is a doctor, physician and surgeon, or practitioner. The legislature doubtless anticipated that those who were prevented by the statute from using the word "doctor" or the prefix "Dr." might use other words or prefixes to indicate that they were doctors, physicians and surgeons, or practitioners, and made that unlawful. So I say that it was the intent of the statute to make the unauthorized use of the word "doctor" unlawful; and the inhibition of the use of the word "doctor" is not affected by any of the other things also made unlawful by the statute. Appellant advertised as "Dr. Armstrong, Chiropodist." She was convicted of a violation of the statute, and the judgment ought to be affirmed.