

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable E. H. Kott, President
Texas State Board of Chiropody Examiners
711 Norwood Building
Austin, Texas

Dear Sir:

Opinion No. 0-5412
Re: Construction of Article
4567, R.C.S., defining a
chiropodist, as related
to one manufacturing and
selling custom-built arch
supports.

You have requested an opinion of this department as to whether one who manufactures and sells custom-built arch supports, made in conformance with an impression taken of the individual's foot, is engaged in the practice of chiropody as defined by Texas statutes. The maker does not hold himself out as a chiropodist and his business is strictly limited to the activities outlined above.

Article 4567, R.C.S., 1925, defines chiropody in this language:

"'Chiropody' means the diagnosis, medical and surgical treatment of the human foot. A Chiropodist is one who practices Chiropody."

Relevant criminal provisions are contained in Article 778, P.C. (1925), of Texas, and read as follows:

"'Chiropody' means the diagnosis, medical and surgical treatment of ailments of the human foot. A chiropodist is one practicing chiropody. Whoever professes to be a chiropodist, or practices or assumes the duties incident to chiropody, without first obtaining from the State Board of

Honorable E. H. Kott, President, Page 2

Chiropody Examiners a license authorizing the
practice of chiropody, shall be fined not ex-
ceeding one hundred dollars, or be confined
in jail not to exceed 30 days."

Both of the provisions quoted above are derived
from Chapter 169 at page 357 of the Acts of the 38th Legis-
lature (1923) and only minor changes were made in the codi-
fication of 1925.

The statutory definitions of chiropody as set out
above are ambiguous. "Diagnosis, medical and surgical treat-
ment" is the language used. Does this mean that the diagnosis
plus a treatment, either medical or surgical, is required to
constitute the practice of chiropody, or is the diagnosis alone
sufficient? In the absence of judicial interpretation of the
statute we look to the Act as a whole, seeking to determine
the legislative intent and thereby resolve the ambiguity of
the definition. A rticle 4570, R.C.S., 1925, as amended by
the Acts of 1939, 46th Legislature, page 565, requires that
an applicant for a license to practice chiropody "shall pre-
sent satisfactory evidence of graduation from a bona fide
reputable school of chiropody in the form of a diploma which
has conferred the degree of Doctor of Surgical Chiropody . . ."
Article 4573 makes provision for the revocation of a chiropo-
dist's license and among other grounds specifies that one "who
gives away or sells drugs or alcohol for other than legitimate
purposes in his practice; or who may be convicted of amputat-
ing the human foot or toe or of using an anesthetic other than
local", may have his license revoked.

It seems to us that from a reading of the above quoted
provisions that the Legislature contemplated that a chiropodist
as regulated by our statutes is one who engages not in the
diagnosis of ailments of the foot alone, but in the medical
treatment and minor surgery of the foot as well. Furthermore,
in requiring a diploma from a "bona fide reputable school of
chiropody" we think it was the intention of the Legislature
that a Texas chiropodist should be equipped to practice and
engage in the practice of chiropody in accordance with general-
ly accepted standards and in the accepted field of his calling.

In view of the ambiguous definitions of chiropody
and the implications gleaned from a reading of the regulatory
statutes on this subject as a whole, we believe the question

Honorable E. H. Kott, President, Page 3

under consideration should be ruled by the decision of State Board of Medical Examiners vs. Uchin, 156 Atl. 285, a New Jersey case in which the defendant was charged with practicing chiropody without a license. In that case the Legislature had not attempted to define chiropody while in Texas our definition is ambiguous and indefinite. Relevant quotations from that case are as follows:

"The facts, as they appear in the testimony, are that professional women investigators employed by the State did, on several occasions, enter the shoe store of the defendant, who appears to be a reputable dealer of some twenty years standing in the city of New Brunswick, and complained of pains in the feet. The dealer suggested that they bathe their feet in hot water, use soap, balm, and powders; he also had the witnesses remove their shoes and stand on a pedigraph (electrical machine) to take 'a picture of their feet'. He finally sold them some nationally known proprietary preparations in the original packages, having printed thereon a written statement as to their uses, and the price printed thereon. Defendant also sold a pair of arch supports. The dealer called their attention to the directions on the packages. He did not hold himself out as a doctor of chiropody, nor did he cut any corns or calluses, nor did he make any charges other than the printed price for the so-called remedies. (Underscoring ours)

" . . . .

"Laws are enacted to be read and obeyed by the people at large, and words in common use by the people should be given the same meaning in the law as they have among the people who are expected to read them. Adams v. Lansdon, 18 Idaho, 483, 110 Pac. 280.

"While the removal of corns and calluses constitutes chiropody, according to its commonly accepted definition, I am not ready to hold that the other treatments alleged to have been suggested by the defendant come within its scope. State v. Armstrong, 38 Idaho, 498, 225 Pac. 491, 33 A.L.R. 836."

Honorable E. H. Kott, President, Page 4

We therefore conclude, limiting this opinion to the facts stated in the outset, that they do not disclose a case of the practice of chiropody under our Texas statutes. To hold otherwise, would subject the custom shoe and boot maker to the regulations here under consideration as he must necessarily gauge the physical characteristics of the foot in order to provide the desired comfort and support in a shoe for his customer. It would likely embrace the shoe salesman who recommended a certain last or arch to contribute to the foot comfort of his patron. We believe that such a holding would be foreign to the intent of the Legislature.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Eugene Alvis*
Eugene Alvis
Assistant

APPROVED DEC 23, 1943

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

EA:ff
J.C.C.

